749 So.2d 159 (1999)
Rusty WILLIAMS a/k/a Rusty Chantel Williams, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00536-COA.
Court of Appeals of Mississippi.
March 23, 1999.
*160 William C. Trotter, III, Belzoni, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE McMILLIN, P.J., DIAZ, KING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Rusty Williams was indicted for the July 12, 1997 murder of Caron Smith. Williams received a jury trial in the Circuit Court of Humphreys County, Mississippi. The jury returned a verdict of guilty, and thereafter, Williams filed his motion for a new trial and JNOV. These motions were denied. Williams was then sentenced to serve a term of life imprisonment. Feeling aggrieved by this judgment, Williams filed his appeal.

FACTS
¶ 2. In the early morning hours of July 12, 1997, Caron Demon Smith died after receiving a discharge from a sawed-off shotgun. Prior to his demise, Shameika Bronson, Smith's companion for the evening, testified that she and the deceased left Tiffany's club to go to his car. Standing near Smith's car was Roosevelt Dear and Williams. Smith indicated that some of his property was missing and that he could not find his gun. Smith, Dear, and Williams exchanged words. Soon thereafter, Williams fired a shotgun in Smith's direction, hitting his intended victim in the chest.
¶ 3. L.J. Luton testified that on the night/early morning of the murder, he was managing Tiffany's club. He stated that he did not see the shooting take place, but he did testify that he saw Williams and Dear kicking Smith while Smith was on the ground.
¶ 4. Several deputy sheriffs testified about what occurred that night. Deputy Zelie Shaw testified that his investigation resulted in the belief that a shotgun had been used to commit the crime. Deputy Shaw further noted that L.K. Newell was the brother of the appellant.
¶ 5. Deputy Sheriff James Terry testified that Luton had indicated to him that only Roosevelt had kicked Smith. Luton stated that the portion of his statement germane to the kicking incident must have been removed from his full statement. Deputy Terry also testified that a weapon from the vehicle in which Williams had occupied was recovered.

ISSUES PRESENTED

I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT A DIRECTED VERDICT OF ACQUITTAL AND A REQUESTED PEREMPTORY INSTRUCTION (INSTRUCTION *161 1) AND, LIKEWISE, ERRED IN OVERRULING DEFENDANT'S MOTION FOR A NEW TRIAL OR FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, AS SAID VERDICT WAS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 6. The appellant first asserts that the trial court erred in not granting him a motion for a direct verdict or in the alternative a JNOV. He also insists that he should have received the peremptory instruction he requested. The appellant also argues that the verdict of the jury was against the overwhelming weight of the evidence, and as a result he claims a new trial is warranted.
¶ 7. Motions for a directed verdict and a motion for JNOV. challenge the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993) (stating that a motion for directed verdict tests legal sufficiency of the evidence); McClain v. State, 625 So.2d 774, 778 (Miss.1993) (stating that a motion for judgment of acquittal notwithstanding the verdict also tests legal sufficiency of the evidence). See also Strong v. State, 600 So.2d 199, 201(Miss.1992) (stating that the trial judge is bound by the same law whether addressing a motion for directed verdict or addressing a request for a peremptory instruction). Since both require consideration of the evidence before the court when made, the supreme court (and the Court of Appeals) properly reviews the ruling only on the last occasion that the challenge was made in the trial court. McClain, 625 So.2d at 778.
¶ 8. Concerning the weight of the evidence, the Mississippi Supreme Court has held that "[t]he jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." McClain v. State, 625 So.2d 774, 781 (Miss.1993). Furthermore, "the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion." Id. (citing Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987)). The decision to grant a new trial "rest[s] in the sound discretion of the trial court, and the motion (for a new trial based on the weight of the evidence) should not be granted except to prevent an unconscionable injustice." Id. The supreme court will reverse only for abuse of discretion, and on review will accept as true all evidence favorable to the State. Id.
¶ 9. Williams was charged with "deliberate design" murder pursuant to Miss.Code Ann. § 97-3-19(1)(a). In challenging the sufficiency of the evidence in this assignment, Williams submits that this killing was "manslaughter at best, but actually was his reasonable actions in self-defense as he contended at the trial." The State submits that malice is not a necessary ingredient of murder; deliberate design is all that is required. Hughes v. State, 207 Miss. 594, 605, 42 So.2d 805 (1949). Malice may be inferred from the accused's use of a deadly weapon. Carleton v. State, 425 So.2d 1036, 1041 (Miss. 1983).
¶ 10. In the present case, the jury heard the witnesses and the evidence as presented by both the State and the defense. There exists in the record evidence from which the jury could have inferred the deliberate design murder of Smith. The gun which was used to kill Smith was found in a vehicle owned by L.K. Newell. Williams told the police that he (Williams) shot Smith.
¶ 11. Forensic serologist Dana Johnson examined the shotgun and Williams's shorts for the presence of blood. She detected human blood on the shotgun. She stated that human blood was discovered on Williams's shorts.
¶ 12. Shameika Bronson was the nineteen year old friend of Smith and was with Smith at the time of the shooting. She testified that when she and Smith exited the club, they proceeded to Smith's car. *162 Smith noticed that his car stereo was missing as well as his gun. Smith began speaking with Dear and Williams. Smith questioned Dear and Williams about the missing items. Williams and Dear denied having any knowledge about the alleged theft, then questioned Smith asking him why he was "disrespecting" them. Bronson then watched Williams shoot Smith. Bronson testified that after Smith had been shot, he sat in his car, then fell out of the car. Thereafter, Bronson exited the car and hid behind a van. When she looked back toward the scene, she saw Dear kicking Smith and Williams heckling Smith.
¶ 13. Other witnesses testified about what occurred immediately after the shooting. L.J. Luton, the operator of Tiffany's night club, testified that he walked outside the club and saw Williams standing over Smith beating his victim with a shotgun. Deputy Kenneth Terry arrived at the scene and testified that Luton had told him that Williams was in possession of a weapon.
¶ 14. Dr. Steven Hayne testified about his external examination of the victim. He found that the injuriessmall skin scrapes and scratches located over the face, each measuring individually up to one-half incheswere injuries consistent with a hard object sliding over the skin surface. Concerning the gunshot wound, Dr. Hayne stated that the gunshot to the victim's chest was a "large, gaping entrance gunshot" and he estimated that the shooter was 7-9 feet from the chest of Smith when the shotgun was fired. The cause of death was determined to be a shotgun wound.
¶ 15. The defense of self-defense was not justified from the facts as presented. In order to justify a killing in self-defense, the actor's apprehension of danger must be "objectively" reasonable. Cook v. State, 467 So.2d 203, 207 (Miss. 1985). Whether the accused has, in a particular case, measured up to that standard of conduct is a question to be submitted to and decided by the jury. Rush v. State, 278 So.2d 456, 459 (Miss.1973). Furthermore, there is no entitlement to an acquittal following the use of deadly force in self-defense cases based upon a subjective fear of great bodily injury unless it is determined by the jury that this fear is reasonable under the circumstances. Ellis v. State, 708 So.2d 884, 887 (Miss.1998).
¶ 16. With those parameters in place, it is difficult under the circumstances to envision that Williams has a legitimate claim to this defense. The fact that he was seen kicking his victim after the mortal gunshot is evidence that Williams acted with "malice" rather than his proposed "self-defense." Notwithstanding some mild agitation by the victim because some of his property was missing, nothing in the record supports this argument. Simply put, the reasonable and fair minded jurors exercised their judgment after being presented the evidence, finding Williams guilty.
¶ 17. After reviewing the evidence presented and the applicable law, we find this citation of error to be without merit.

II. WHETHER THE TRIAL JUDGE WAS IN ERROR IN ADMITTING INTO EVIDENCE PHOTOGRAPHS WHICH APPELLANT CONTENDS SHOULD NOT HAVE BEEN ADMISSIBLE, WERE OF NO PROBATIVE VALUE AND PREJUDICIAL TO APPELLANT.
¶ 18. Williams now contends that the introduction of certain photographs prejudiced him. Specifically, he states that the introduction of a photograph of the victim taken at the funeral home prior to his autopsy and a photograph of the victim's vehicle which was taken after the vehicle had been removed from the scene of the shooting did not create an accurate depiction of the crime scene, thus the photographs are not relevant, the value being only to inflame the jury.
¶ 19. The State counters this "irrelevant" argument, by submitting that the photographs were taken shortly after the *163 incident and that the photograph of the victim was probative because it accurately reflected the face of the victim at the time of his death and clearly shows the fatal injury delivered to the victim before he was cleaned for purposes of an autopsy.
¶ 20. In addressing the issue concerning the introduction of the victim's vehicle, the State submits that the photo goes toward the weight of the evidence, not admissibility. Case law supports this argument. In Gossett v. State, 660 So.2d 1285, 1292 (Miss.1995) the Mississippi Supreme Court admitted photographs which clarified witness testimony. Supplementing this argument, the supreme court noted that photographs have evidentiary value where they aid in describing the circumstances of the killing and the corpus delicti. Westbrook v. State, 658 So.2d 847, 849 (Miss.1995). From this law, it is understood that evidence which tends to augment or aid in describing what took place is admissible for evidentiary purposes, and as long as the trial judge did not abuse his discretion (in admitting the photographs) his decision will be upheld. Id. at 849.
¶ 21. As a general rule, the admissibility of photographs into evidence is within the sound discretion of the trial judge. Hewlett v. State, 607 So.2d 1097, 1101 (Miss.1992). Having stated such, we find this citation of error to be without merit.

III. WHETHER THE TRIAL JUDGE ERRED IN ADMITTING HEARSAY STATEMENTS OF L.J. LUTON INTO EVIDENCE THROUGH THE TESTIMONY OF DEPUTY KENNETH TERRY AS AN EXCITED UTTERANCE HEARSAY EXCEPTION.
¶ 22. Williams now argues that the admission of statements made by Deputy Terry was not admissible under the "excited utterance" exception to the hearsay rule. In response to this objection at the trial level, the State argued that admission of these statements was permitted for the non-hearsay purpose of rehabilitating the testimony of Luton, who had been impeached by the defense counsel on cross-examination, and as an exception to the hearsay rule.
¶ 23. Having reviewed the record, we address this citation of error solely from the position that the admission of testimony was to rehabilitate a witness who had previously been impeached.
¶ 24. The testimony of Luton, which was called into question, centered on a statement he gave to police as opposed to his statements on direct and cross-examination. On direct examination, Luton testified that he viewed Williams stomping his victim.
A. He [Williams] hit him [Smith] a couple of times with it [shotgun], and then he stomped him and.... Both of them were stomping him.
¶ 25. On cross-examination, the defense attorney read the witness report which Luton had given to the authorities relating to the incident. The defense attorneyon more than one occasionquestioned Luton concerning the statement that he had seen Williams stomping his victim.
Q. I'll be glad to read the statement, and you tell me in there where it says anything about anybody stomping. Okay? You stop me when I get to that point.
A. I gave him the statement that he was stomping him.
* * *
Q. Now, my question then to you, Mr. Luton, where in that statement is anything about anybody doing any stomping?
A. Where in that statement that I told the police that I couldn't explain it all really then. Now read that part again.
Q. That's what you said?
A. Yeah. Read it again.
Q. I have already read it twice.
A. So he cut that out. I didn't.
Q. Oh, he [referring to the authorities] cut it out?

*164 A. Yeah.
* * *
Q. You couldn't explain it all, and you didn't go back in there and tell him that you left out that part about the stomping?
Following this testimony, the State called Deputy Sheriff Kenneth Terry to testify. After the objection, the State elicited information from Deputy Terry about what happened after he arrived at the scene of the crime. Deputy Terry then testified that Luton told him that Williams had shot Smith; that Dear had stomped Smith; that Williams told Luton that he would whip him; and that Williams was in possession of a firearm.
¶ 26. Upon review of the record, it is clear that Deputy Terry's testimony was offered for the purpose of rehabilitating Luton's testimony which had previously been impeached during his cross-examination. Accordingly, we find that the testimony was admissible for a non-hearsay purpose because the testimony was offered to show the consistency of the witness's statement rather than to show the truth of the statements themselves. The Mississippi Rules of Evidence allow for the limited rehabilitation of a witness's testimony once that testimony has been subject to impeachment by cross-examination:
¶ 27. Rule 801 provides:
(d) Statements which are not Hearsay. A statement is not hearsay if:
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.
In Hosford v. State, 560 So.2d 163, 168 (Miss.1990) (citing Craig v. State, 76 Md. App. 250, 544 A.2d 784 (1988)) the supreme court stated that rebuttal testimony by third persons may be admitted to demonstrate the absence of influence or motive to fabricate. From our review of the situation, Deputy Terry's testimony was offered to rebut the charge of fabrication, which was implied during the defense counsel's cross-examination of Luton.
¶ 28. Having stated the above, we find this citation of error to be without merit.

IV. WHETHER REVERSIBLE ERROR WAS COMMITTED IN NOT PROPERLY INSTRUCTING THE JURY AS TO SELF-DEFENSE.
¶ 29. As a final citation of error, Williams insists that the State's depiction of self-defense in its instruction S-2 is not accurate. Jury instruction S-2 states:
The Court instruct[s] the Jury that in order to justify a homicide on the plea of self-defense in this case, there must be something shown in the conduct of Caron Demon Smith, the deceased, at or about the time of his death, indicating a present intention to kill Rusty Williams or to do him some great personal injury, and imminent danger of such intention being accomplished. Mere fears or beliefs of Rusty Williams are insufficient. The danger to Rusty Williams from Caron Demon Smith, must have been such as to lead a reasonable person under similar circumstances to reasonably believe infliction of serious bodily injury or killing was necessary to prevent Caron Demon Smith from then and there killing Rusty Williams or doing him some great bodily harm.
Williams further believes that his instruction of self-defense closely follows the instruction allowed in Robinson v. State, 434 So.2d 206 (Miss.1983)[1]though not following the exact language approved by the Robinson court. Given as amended, jury instruction D-7 says:
The Court instructs the Jury that the law authorizes action on a reasonable *165 appearance of danger, either real or apparent, and the Defendant is entitled to the benefit of appearances as presented to him and reasonably acted upon. The Court further instructs the jury that the term "apparent danger" means such overt demonstration, by conduct and acts, of a design to take life or do some great personal injury, as would make the killing reasonably apparently necessary for self-preservation or to escape great bodily harm, and that in order to establish that a homicide was committed in self-defense, it is not essential that the Defendant show that the deceased actually had a deadly weapon; it is sufficient that he show that the conduct of the deceased was such as to cause a reasonable person under similar circumstances to reasonably believe infliction of serious bodily injury or killing was necessary to prevent the deceased from then and there killing the defendant or doing him some great bodily harm.
According to Williams, instruction S-2 is the culprit and a chief cause of why this case should be reversed. As a final note, Williams submits that giving both his and the State's instructions is confusing and thus defective when read together.
¶ 30. The State submits that instruction S-2 is supported by the supreme court's holding in Ellis v. State, 708 So.2d 884, 886-87 (Miss.1998).[2] According to the State, jury instruction S-2 tracks the language given in Ellis. Though the supreme court noted that the instruction in Ellis was "less well-written" than the model instruction found in Robinson, the trial court in Ellis did not find the granting of the instruction to constitute error.
¶ 31. After a review of the record, we find that the citation of error to be without merit. In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982). We have carefully considered all of the instructions and are of the opinion that the jury was amply and fairly instructed as to the law with reference to self-defense.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HUMPHREYS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The instruction given in Robinson states: The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to do him some great bodily harm, and in addition to this, that there must be imminent danger of such design being accomplished; and hence, mere fear, apprehension or belief, however sincerely entertained by one person, that another designs to take his life or to do him some bodily harm, will not justify the former in killing the latter. A party may have apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the Jury may determine the reasonableness of the ground upon which he acted.
[2] The jury instruction in Ellis read as follows:

(T)here must be something shown in the conduct of the deceased indicating a present intention to kill or do some great personal injury to the slayer and imminent danger of such intention being accomplished; mere fears or beliefs are insufficient. The danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing to him some great bodily harm.