KING, C.J.,
for the Court:
¶ 1. In 2006, Krystal Jordan, Timothy Jordan, Glenn Grose, and Johnny Grose were indicted for sexual battery, gratification of lust, and child neglect of A.B., Krystal and Tim’s then three-year-old daughter.[1] Krystal pled guilty to three counts of sexual battery and felony child abuse. Because the trial court denied Tim’s motion for a severance, the remaining defendants underwent a joint trial where Krystal testified against them. All three men were convicted of the charges. Aggrieved, Tim, Glenn, and Johnny appeal separately, raising several issues for the Court’s review.
For the sake of judicial efficiency, we have grouped their issues as follows:
I. Did the trial court err by denying Tim’s motion for severance;
II. Did the trial court err by allowing the State to amend the dates contained in the indictment, expanding the time in which the alleged offenses occurred;
III. Did the trial court err by allowing improper hearsay testimony, including the forensic interview, to be admitted into evidence under the tender-years exception;
IV. Did the trial court err by allowing the State to ask Krystal leading questions;
*822 V. By allowing Camelia Fondren and Pammie Davidson to testify, did the trial court erroneously allow improper legal opinions, comments on the evidence, and bolstering of Krystal’s veracity;
VI. Did the trial court err by not allowing the defense to cross-examine Gloria Hollis Becerril regarding her pending drug charge; and
VII. Is the verdict against the overwhelming weight of the evidence?
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Numerous witnesses testified during this trial. Because the State bore the burden of proving that the defendants committed the crimes charged beyond a reasonable doubt, we will focus on the State’s witnesses.
I. The State’s Case-In-Chief
a. Martha Hester Grose
¶ 3. Martha Hester Grose is A.B.’s maternal great-grandmother. Martha testified that on October 30, 2005, she had received Tim’s permission to keep A.B. for a few days. On the first night, A.B. complained of pain whenever she urinated and during her bath. Curious, Martha looked and saw that A.B.’s legs and inner thighs were red. Martha asked A.B. if anyone had “hurt her down there,” and A.B. replied yes. Martha testified that A.B. named Tim, Krystal, Johnny, and Glenn as the perpetrators. Martha did not report the alleged abuse that night.
b. Gloria Hollis Becerril
¶ 4. The next morning, Martha took A.B. to Gloria Hollis Becerril, who is A.B.’s maternal grandmother, and relayed A.B.’s allegations to Gloria. Gloria checked the child’s genitalia and saw that it was red and “raw.” Gloria questioned A.B. about the alleged abuse; and again, A.B. named Krystal, Tim, Glenn, and Johnny as the perpetrators. Gloria testified that A.B. specifically told her that Tim had sexually assaulted her in the shower. Afterwards, Gloria called the Department of Human Services (DHS) to report the alleged abuse.
¶ 5. Gloria also testified regarding A.B.’s behavior following the allegations of sexual abuse. A.B. would masturbate, grab peoples’ private parts, express a desire to touch someone or to have someone touch her, abuse the family dog, physically assault and fondle her baby sister, and simulate oral sex with food.
¶ 6. On cross-examination, Gloria testified that she was afraid that A.B. would accuse her of sexual abuse. The defense elicited from Gloria that she once had a sexual relationship with Glenn and also questioned Gloria about her pending drug charge.
c.Rhiannon Shaw
¶ 7. Before this incident, DHS had received a few anonymous calls regarding Krystal’s drug abuse, alleged prostitution, and possible child neglect. On October 31, 2005, Rhiannon Shaw, a DHS family protection specialist, received a phone call from Gloria. Gloria reported that A.B.’s bottom was “raw” and that A.B. had disclosed that Krystal, Tim, Glenn, and Johnny had touched her inappropriately. Shaw instructed Gloria not to question A.B. anymore, and she immediately scheduled a forensic interview and medical examination of A.B.
¶ 8. Via a two-way mirror, Shaw observed the forensic interview, which was conducted on November 3, 2005, by Ejeera Joiner of Family Crisis Services. The jury viewed the forensic interview. After-wards, Shaw was questioned about the interview. Shaw testified that A.B. stated that Krystal, Tim, Glenn, and Johnny had *823 touched her “nu-nu.” A.B. also said that Tim, Glenn, and Johnny touched her “nu-nu” with their penises, and A.B. demonstrated the acts using anatomically correct dolls.
¶ 9. During cross-examination, Shaw testified that AB.’s statements were inconsistent at times, and Joiner did lead A.B. on some questions. For instance, A.B. did not name Glenn as a perpetrator until Joiner asked about Glenn specifically. Also, Joiner asked A.B. about her grandmother, and A.B. stated that her grandmother had touched her as well.
d.Tomiko Mackey
¶ 10. Tomiko Mackey, a licensed clinical social worker, was accepted as an expert in the field of forensic interviewing. Through Finding Words Mississippi, Mackey conducted forensic interviews and trained others in the field.
1111. Mackey testified that Joiner had followed the proper protocol during A.B.’s forensic interview. But Mackey took issue with some of Joiner’s methods of questioning. First, Mackey indicated that Joiner had asked A.B. several questions at once without giving her an opportunity to respond. Second, Mackey mentioned several times that Joiner had questioned A.B. about the defendants in groups instead of addressing each defendant individually. And third, Mackey testified that Joiner had improperly led A.B. when she inquired about Glenn.
¶ 12. Despite these issues, Mackey observed that A.B. was able to disclose the events, and she consistently named Tim, Glenn, and Johnny as the perpetrators. As a result, Mackey opined that AB.’s disclosures were consistent with those of a child who had been sexually abused,
e.Dr. Thomas Fowlkes
¶ 13. Dr. Thomas Fowlkes, who specializes in emergency medicine and correctional medicine, treated Krystal for alcohol and drug abuse and psychiatric illness while she was incarcerated at the Lafayette County Detention Center. Dr. Fowlkes testified that Krystal had expressed a desire to commit suicide, so he prescribed her an antidepressant. Dr. Fowlkes also put Krystal on antipsychotic medication. When asked about Krystal’s mental capacity, Dr. Fowlkes testified that Krystal was tested and determined to be mildly retarded, which stemmed from her drug use.
f.Krystal Jordan
¶ 14. Krystal admitted she had a history of drug abuse, and she had a sexual relationship with all three defendants. Krystal stated that AB.’s sexual abuse began when she was pregnant with C.B., Krystal and Tim’s youngest daughter. During Krystal’s pregnancy, Tim asked Krystal if he could have sex with A.B. Krystal agreed, and she assisted Tim in sexually penetrating the child while they were in the shower. Krystal testified that A.B. screamed and yelled for help during the sexual assault. During subsequent sexual assaults, Krystal drugged the child with Lortab to keep her calm. Krystal also testified that Tim sexually assaulted A.B. a second time in their home.
¶ 15. After C.B. was born in May 2005, Krystal and Tim, along with their children, moved to Johnny’s trailer. Krystal testified that Tim continued to sexually abuse A.B. Eventually, Glenn found out about Tim’s acts and requested to have sex with A.B. as well; Krystal obliged. Krystal described one incident in which Glenn and Tim took turns sexually assaulting A.B. When Johnny learned that the other men were having sex with A.B., he requested to have sex with her as well. Johnny is wheelchair bound and suffers from rheumatoid arthritis, making it difficult for him to use his hands. Because of Johnny’s *824 physical impairments, Krystal helped Johnny sexually assault A.B. by removing their clothes and by sitting A.B. on top of Johnny. Krystal also described how she taught A.B. to perform oral sex on Johnny. Krystal testified that, in total, Glenn had sex with A.B. approximately three or four times, and Johnny had sex with A.B. twice.
¶ 16. On cross-examination, the defense presented several letters that Krystal wrote to the defendants while they were incarcerated; Krystal denied writing some of the letters. However, in these letters, Krystal maintained her innocence and that of the defendants. When questioned regarding specific passages in the letters, Krystal claimed that she could not recall what her words meant. The defense also questioned Krystal about her plea agreement. Krystal had difficulty answering the questions, but she did acknowledge that she received a plea deal and stated that she did not think the State would take away her plea deal if she did not testify against the defendants.
g. Pammie Davidson
¶ 17. Pammie Davidson was employed with the district attorney’s office as the victim’s advocate coordinator, and she helped prepare Krystal for trial. The State questioned Davidson about prior statements that Krystal made to her regarding Tim, Glenn, and Johnny. The defense objected on the ground of hearsay. However, the trial court allowed Davidson’s testimony as a prior consistent statement under Mississippi Rule of Evidence 801(d)(1)(B).
h. Camelia Fondren
¶ 18. Next, the State called Krystal’s attorney, Camelia Fondren. The defense objected arguing that: (1) Fondren was not disclosed as a witness; (2) they were not prepared to examine her; (3) any information that Fondren could relay was protected by the attorney/client privilege; and (4) Fondren’s testimony would amount to hearsay. The State countered that Fondren’s testimony was admissible as a prior consistent statement under Mississippi Rule of Evidence 801(d)(1)(b). The trial court allowed Fondren’s testimony and gave the defense an opportunity to question Fondren before she took the stand.
¶ 19. On direct-examination, Fondren testified about the particulars of Krystal’s plea agreement with the State. Fondren stated that she had talked to Krystal extensively about her involvement in the crimes against A.B. Krystal admitted to Fondren that she had helped Tim, Glenn, and Johnny sexually assault A.B. Based on this, Fondren felt as if Krystal was justified in pleading guilty to the charges. Fondren approached the State to negotiate a plea deal for Krystal. The State offered to recommend that Krystal serve a total of twenty years with ten years suspended in exchange for her cooperation in this case.
¶ 20. During Fondren’s cross-examination, the defense elicited that Krystal was also charged with sexual battery against Martha. On the same day that Krystal entered her guilty plea, this charge of sexual battery was dropped.
¶ 21. After Fondren’s testimony, the defense moved for a mistrial. The defense argued that Fondren’s testimony was improper opinion testimony and prejudicial to the defendants. The defense argued that Fondren’s testimony was used to suggest that since Krystal pled guilty, Tim, Glenn, and Johnny were also guilty.
¶ 22. The trial court ruled that the defense opened the door to Fondren’s testimony by implying that Krystal’s plea deal was obtained by fraud. Further, the trial court explained that this made the testimony relevant and admissible as to whether there was a legitimate basis for Krystal’s *825 guilty plea. Accordingly, the trial court denied the motion.
i. Dr. Tanya King
¶ 23. Dr. Tanya King, a pediatrician with training in the area of child abuse and neglect, examined A.B. at the request of DHS. Dr. King testified that A.B.’s genitalia were red and inflamed. She found bruising on both sides of the opening of A.B.’s vagina. Dr. King testified that A.B.’s hymen was not torn. But a young girl’s vagina is small, and the hymen is recessed, making it difficult for the perpetrator to totally penetrate the child. Also, Dr. King testified that A.B.’s anus was dilated, which typically results from repeated penetration by an object. Dr. King testified that she had never seen a child’s anus damaged to that degree.
j. Robin Smith
¶ 24. Robin Smith was A.B.’s therapist. She testified that A.B. consistently disclosed to her that Krystal, Tim, Glenn, and Johnny had touched her inappropriately. Smith also testified regarding A.B.’s behavioral issues. A.B. used vulgar language, exhibited cruelty toward the family dog and her sister, touched other children and adults inappropriately, expressed desires to touch someone or to have someone touch her, rubbed the private parts of models in magazine ads, and ate her own feces. Smith testified that A.B.’s behavior was consistent with that of a child who has been sexually abused. . Smith also stated that A.B. would revert to these behaviors whenever she was questioned about her sexual battery, which negatively impacted A.B.’s psychological health.
II. Timothy Jordan’s Case-In-Chief
¶ 25. Tim’s character witnesses testified that Tim was a good father and would not hurt his child. In addition, Alice Jordan, Tim’s mother, and Danielle Fortner, Tim’s niece, testified that they babysat A.B. A.B. never complained to them about vaginal pain, and they did not notice anything abnormal about the child’s genitalia. Also, Donald Jordan and Carlee Hudson, two of Tim’s siblings, testified that they never heard the child complain of genital pain.
¶ 26. Tim admitted to using drugs and drinking alcohol. Tim also admitted having knowledge of Krystal’s extramarital affairs, including participating in a ménage á trois with Glenn and Krystal. But Tim denied sexually abusing his daughter. Tim testified that he did not know that A.B. was sexually abused in 2005, and he did not think that Glenn or Johnny would hurt A.B. Tim also testified regarding several letters Krystal wrote to him while he was incarcerated. In those letters, Krystal proclaimed their innocence and denied knowing who had sexually abused A.B.
III. Glenn Grose’s Case-In-Chief
¶ 27. Glenn presented several character witnesses, who testified that Glenn would not harm a child. The witnesses also acknowledged Glenn’s drug and alcohol problem. Stacey Lindsey, who dated Glenn, testified that Glenn could not function sexually when he was intoxicated or “high.”
¶ 28. Glenn admitted that he had a history of drug and alcohol abuse. He also testified that he does not like to have sex when he is “using.” Glenn also admitted participating in a ménage á trios with Tim and Krystal. But Glenn stated that A.B. was asleep on the floor during the sexual encounter, and the child was not involved in the act. Glenn testified that he had no idea that A.B. was being sexually abused. Glenn mentioned several other men who had been around A.B., but he did not suggest that the other men were responsible for A.B.’s sexual battery. Glenn also testified that Krystal had written him several letters while he was incarcerated. In *826 those letters, Krystal proclaimed their innocence and stated that she did not know who had sexually assaulted A.B.
IV. Johnny Grose’s Case-In-Chief
¶ 29. Johnny presented several witnesses, who testified about his physical condition, general character, and interactions with A.B. Sherry Powell, Johnny’s home health nurse testified that Johnny was wheelchair bound and had rheumatoid arthritis, which made it difficult for him to use his hands. Margie Tidwell, Johnny’s sister, relayed the same information about Johnny’s physical condition. Tidwell observed A.B. around Johnny, and she testified that there was not much interaction between the two. Also, Tidwell disclosed that she made the initial report to DHS because Krystal was not taking care of her children and having sex with three of her brothers, which caused arguments in their family. Mary Sue Williams, Johnny’s ex-girlfriend, testified that she and Johnny were sexually intimate. But because of Johnny’s physical condition, sex was difficult, and she had to do all of the “work.”
¶ 30. Johnny admitted having a sexual relationship with Krystal. He denied sexually abusing A.B. and testified that he had no knowledge that A.B. was being sexually abused.
ANALYSIS
I. Motion for Severance
¶ 31. Tim argues that the trial court erred by denying his motion for severance. Glenn and Johnny did not join in this motion. The State argues that neither defendant implicated each other in the alleged crimes; thus, Tim suffered no prejudice and severance was not required.
¶ 32. The grant or denial of a motion for severance is within the trial court’s sound discretion. Sanders v. State, 942 So.2d 156, 158 (¶ 10) (Miss.2006) (quoting Uniform Rule of Circuit and County Court 9.03). Thus, we review the trial court’s ruling for an abuse of discretion. Id.
¶ 33. Co-defendants are not automatically entitled to separate trials. Id. at (¶ 11). When determining whether to grant or deny a motion to sever, the trial court considers (1) whether a co-defendant attempts to exonerate himself at the expense of another co-defendant, and (2) whether the weight of the evidence goes more to the guilt of one co-defendant over another. Id. In this case, the trial court ruled that there was no evidence that the co-defendants’ defenses were in conflict.
¶ 34. Tim maintains that his defense and that of his co-defendants were diametrically opposed, and all sought to exculpate themselves at the expense of the others. On the contrary, a review of the record shows that neither co-defendant implicated another co-defendant in the crime. In fact, Tim testified that he did not think Glenn and Johnny would hurt A.B. Also, the evidence did not go more toward the guilt of any one defendant over the other. We find that the defendants were not prejudiced by the joint trial. Thus, the trial court did not abuse its discretion by denying Tim’s motion for severance.
II. Amendment to the Indictment
¶ 35. Initially, each count of the indictment alleged that the event occurred in a particular month. But the State amended each count in the indictment expanding the time to stretch over several months. Tim, Glenn, and Johnny argue that the trial court erred by allowing the State to amend the indictment because: (1) it was an improper amendment to the substance of the indictment; (2) changing the dates was prejudicial to their defense; (3) the amendment , made all of the counts *827 identical; and (4) the amendment confused the jury.
 ¶ 36. An indictment may not be amended if the amendment is one of substance, except by action of the grand jury. Spears v. State, 942 So.2d 772, 774 (¶ 6) (Miss.2006). But the indictment may be amended if the change is simply to the form of the indictment. Id. “It is well settled ... that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant’s case.” Id. (quoting Miller v. State, 740 So.2d 858, 862 (¶ 13) (Miss.1999)).
¶ 37. Mississippi Code Annotated section 99-7-5 (Rev.2007) specifically addresses allegations of time in an indictment and provides that:
An indictment for any offense shall not be insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly....
Moreover, Uniform Rule of Circuit and County Court 7.06 provides that the failure to state the correct date in an indictment does not render the indictment insufficient.
¶ 38. Time is not an essential element of the crimes of sexual battery, gratification of lust, and child abuse. See Miss. Code Ann. § 97-3-95(l)(d) (Rev.2006); Miss.Code Ann. § 97-5-23 (Rev.2006); Miss.Code Ann. § 97-5-39(l)(c) (Rev. 2006). Therefore, the amendment was one of form; thus, it was allowable. Tim’s, Glenn’s, and Johnny’s defenses were simply that they had not sexually abused A.B. This defense could have been presented no matter what dates were alleged in the indictment. See Leonard v. State, 972 So.2d 24, 29 (¶ 18) (Miss.Ct.App.2008). Thus, we find that the defendants were not prejudiced by the amendment to the indictment. This issue is without merit.
III. Tender-Years Exception, Forensic Interview, and Hearsay
¶ 39. Tim, Glenn, and Johnny argue that the tender-years exception was not properly applied in this case because: (1) A.B. was not unavailable to testify; (2) A.B.’s statements were not reliable, including those made during the forensic interview; and (3) the statements were testimonial in nature, violating their right to confrontation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 40. When reviewing the admission of evidence, we will not disturb the trial court’s ruling absent a finding of abuse of discretion. Hobgood v. State, 926 So.2d 847, 852 (¶ 11) (Miss.2006). Under Mississippi Rule of Evidence 803(25), statements made by a child regarding sexual abuse may be admissible as an exception to the hearsay rule. In pertinent part, the trial court must determine that: (1) “the time, content, and circumstances of the statement provide substantial indicia of reliability”; and (2) the child “is unavailable as a witness ... [and] there is corroborative evidence of the act.” Id.
¶ 41. The supreme court has held “that there is a rebuttable presumption that a child under the age of twelve is of tender years.” Veasley v. State, 735 So.2d 432, 436 (¶ 16) (Miss.1999). At the time these alleged events occurred, A.B. was three years old. Thus, there existed a re-buttable presumption that A.B. was a child of tender years. Based on A.B.’s behavioral issues, Smith, A.B.’s therapist, opined that further questioning about the events would negatively affect A.B.’s mental health. We find that the trial court did *828 not abuse its discretion by determining that A.B.’s health and welfare would be greatly affected by testifying and that she was unavailable as a witness. See Britt v. State, 844 So.2d 1180, 1184 (¶¶ 12-14) (Miss.Ct.App.2003).
¶ 42. The trial court conducted a thorough examination to determine whether A.B.’s statements possessed substantial indicia of reliability. Using the twelve factors listed in the comment to Rule 808(25), the trial court determined that: (1) A.B. had no motive to lie; (2) the general character of the declarant was a neutral factor given A.B.’s age; (3) she repeated her statements to multiple persons; (4) the statements were spontaneous; (5) the timing of the declarations was a neutral factor; (6) the relationship between A.B. and the witnesses favored admission; (7) whether A.B.’s recollection was faulty was a neutral factor; (8) the statements were certainly made; (9) the persons testifying about the statements were credible; (10) A.B.’s age did not favor admission; (11) most of A.B.’s statements were made in a non-suggestive environment; and (12) the statements were not fabricated. Overall, the trial court determined that A.B.’s statements possessed substantial indicia of reliability.
¶ 43. Tim, Glenn, and Johnny argue that A.B.’s statements were inconsistent during the forensic interview, and the questions were sometimes leading. But the trial court determined that, as a whole, A.B.’s statements possessed substantial in-dicia of reliability because the statements were repeated in non-suggestive environments. We find that there is substantial evidence to support the trial court’s ruling.
¶ 44. In Crawford, the United States Supreme Court held that under the Confrontation Clause of the Sixth Amendment, testimonial hearsay was not admissible unless the defendant had an opportunity to cross-examine the declarant. Crawford, 541 U.S. at 59, 124 S.Ct. 1354. The Mississippi Supreme Court has determined that “a statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused.” Hobgood, 926 So.2d at 852 (¶ 12).
¶ 45. In this case, A.B.’s forensic interview was set up by DHS and administered by a non-profit entity; it did not arise based on a police investigation. Contra Williams v. State, 970 So.2d 727, 734 (¶ 22) (Miss.Ct.App.2007) (finding that because law enforcement was closely involved in obtaining a forensic interview, it was testimonial in nature). Also, statements A.B. made to Smith occurred in the course of therapy. See Hobgood, 926 So.2d at 852 (¶ 13). Because the statements were not testimonial in nature, we find that the defendants’ Sixth Amendment rights were not violated. However, even if the forensic interview were to be classified as testimonial, its admission would be harmless error. In the forensic interview, A.B. identified Tim, Glenn, Johnny, and Krystal as the persons who had sexually abused her. This same information was admitted into evidence through the testimony of Krystal, A.B.’s mother, who was a participant and a direct eyewitness to the sexual abuse of A.B. by the appellants. Thus, this issue is without merit.
IV. Leading Questions in Krystal’s Direct-Examination
¶ 46. Johnny is the only defendant who raises this issue. Whether to allow leading questions rests within the trial court’s discretion. Harris v. State, 979 So.2d 721, 730-31 (¶ 29) (Miss.Ct.App.2008). “Unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision. This is because the harm *829 caused is usually speculative and likely inconsiderable and only the trial court was able to observe the demeanor of the witness to determine the harm.” Id. at 731 (¶ 29) (quoting Mosby v. State, 749 So.2d 1090, 1093 (¶ 9) (Miss.Ct.App.1999)).
¶ 47. Based on our review of the record, the State asked Krystal leading questions in an effort to get her to describe details of events. For instance, the State asked Krystal several leading questions to describe Krystal’s teaching A.B. to perform oral sex on Johnny. The trial court was in the best position to determine whether leading questions were necessary to develop Krystal’s testimony. Because of Krystal’s diminished mental capacity, the trial court allowed the State to ask her leading questions. Based upon our review of the record, we cannot find that the trial court abused its discretion. This issue is without merit.
V. Pammie Davidson’s and Camelia Fondren’s Testimonies
¶ 48. Whether to grant or deny a motion for a mistrial is within the sound discretion of the trial court and will be reviewed for an abuse of discretion. Rollins v. State, 970 So.2d 716, 720 (¶ 10) (Miss.2007).
A. Pammie Davidson
¶ 49. Under this assignment of error, only Johnny argues that the trial court erred by allowing Davidson’s testimony as a prior consistent statement. It is important to note that Johnny failed to object to Davidson’s testimony at trial. However, since Tim objected, we will address this issue on the merits.
¶ 50. Mississippi Rule of Evidence 801(d)(1)(B), which provides that:
A statement is not hearsay if.... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.
The supreme court has held that “a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive was admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it was inadmissible if made afterwards.” Owens v. State, 666 So.2d 814, 816 (Miss.1995).
¶ 51. Based on our review of the record, the defense attempted to imply that Krystal had changed her story in exchange for her plea deal. The State attempted to rebut the charge with prior consistent statements. Davidson was allowed to testify about the disclosures Krystal made to her while she was preparing Krystal for trial. But based on the law, Davidson’s testimony did not qualify as a prior consistent statement. Any statement Krystal relayed to Davidson occurred after Krystal had entered her guilty plea and in preparation of trial. However, outside of Davidson’s testimony, there was other substantial proof of A.B.’s allegations against the defendants. Thus, we find that the admission of Davidson’s testimony is harmless error. See id. at 817.
B. Camelia Fondren
¶ 52. Tim, Glenn, and Johnny argue that: Fondren’s testimony should have been excluded due to a discovery violation; the trial court erred by allowing Fondren’s testimony as a prior consistent statement; and Fondren improperly bolstered Krystal’s credibility and gave improper opinion testimony.
¶ 53. In regard to the alleged discovery violation, the defendants argue that Fon- *830 dren’s testimony should have been excluded because the State had failed to identify her as a witness pursuant to Uniform Rule of Circuit and County Court 9.04. The State explained to the trial court and the defendants that Fondren would testify about Krystal’s plea agreement and prior consistent statements regarding who had sexually abused A.B. The trial court allowed the defense an opportunity to question Fondren before she took the stand. Rule 9.04(I)(2) provides that:
If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
The defendants had knowledge of what Fondren would testify to, and they did not claim undue surprise or unfair prejudice or seek a continuance or mistrial after having an opportunity to examine Fondren outside of the presence of the jury. Thus, the defendants waived the discovery-violation issue. See Comby v. State, 901 So.2d 1282, 1287 (¶ 12) (Miss.Ct.App.2004).
¶ 54. During Krystal’s cross-examination, the defense showed that Krystal’s testimony was the product of a plea agreement and implied that Krystal had motivation to fabricate this story against the defendants. Thus, the defense opened the door, allowing the State to present rebuttal evidence. See Jackson v. State, 766 So.2d 795, 808 (¶40) (Miss.Ct.App.2000). Fondren was allowed to testify about the particulars of Krystal’s plea agreement and the disclosures Krystal had made to her about this case. Fondren testified that Krystal originally denied any involvement in the acts. However, as Fon-dren and Krystal established a relationship, Krystal finally admitted her guilt as to the crimes charged against her. Thereafter, the State offered a recommended sentence in exchange for Krystal’s cooperation in the defendants’ cases. Because Krystal admitted to helping the defendants sexually abuse A.B., Fondren opined that Krystal was justified in entering a guilty plea to the charges.
¶ 55. The supreme court has held that an accomplice’s testimony that he or she had previously entered a guilty plea to the same charge that the defendant is being tried for is evidence of a prior consistent statement. Hathorne v. State, 759 So.2d 1127, 1132 (¶ 26) (Miss.1999). In addition, it is at times appropriate for a third person to testify to rebut a charge of improper influence or recent fabrication. Williams v. State, 749 So.2d 159, 164 (¶ 27) (Miss.Ct.App.1999) (citing Hosford v. State, 560 So.2d 163, 168 (Miss.1990)). Based on our review of the record and in light of Krystal’s diminished mental capacity, we find that Fondren’s testimony was a proper rebuttal to the defense’s charge of recent fabrication, and it was not a bolstering of witness credibility. This issue is without merit.
VI. Gloria’s Pending Drug Charge
¶ 56. Glenn is the only defendant who raises this argument. The State made a motion in limine to exclude evidence regarding Gloria’s pending drug charge. The trial court sustained the motion. But defense counsel was allowed to question Gloria about the pending charge during cross-examination. Thus, we find that this issue is moot.
VIL Weight of the Evidence
¶ 57. Tim, Glenn, and Johnny made separate motions for a judgment notwithstanding the verdict (JNOV) or, in *831 the alternative, a new trial, which the trial court denied. In support of their respective motions, the defendants maintained that: A.B.’s statements were inconsistent; Krystal was not a credible witness; and there was no direct evidence linking them to the sexual abuse and child neglect.
¶ 58. A motion for a JNOV challenges the legal sufficiency of the evidence. Pratt v. State, 870 So.2d 1241, 1246 (¶ 13) (Miss.Ct.App.2004). We will not disturb the trial court’s ruling unless, “with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.” Id. at 1247 (¶ 14). On the other hand, a motion for a new trial challenges the weight of the evidence. Id. at 1248 (¶ 20). We will not disturb the trial court’s ruling unless “the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
¶ 59. The defendants argue that there is no direct evidence linking them to the sexual abuse. They also contend that they were unaware that A.B. had been sexually abused; thus, they cannot be guilty of child neglect. Dr. King’s medical examination of A.B. revealed that the child had been sexually abused. In addition, many witnesses testified that A.B. identified Tim, Glenn, and Johnny as the persons who had abused her. Witness testimony alone is sufficient to secure a conviction. See Lattimer v. State, 952 So.2d 206, 224 (¶ 55) (Miss.Ct.App.2006).
¶ 60. Specifically, Martha and Gloria testified that A.B. disclosed to them that Tim had hurt her “down there.” During the forensic interview, A.B. said that Tim had touched her vagina with his penis, and she demonstrated the act using anatomically correct dolls. Smith testified that A.B. accused Tim of abusing her. A.B. also told Smith about the shower incident. Furthermore, Krystal’s testimony corroborated A.B.’s disclosures. This evidence is sufficient to support Tim’s convictions.
¶ 61. In regard to Glenn, A.B. disclosed to Martha and Gloria that Glenn had hurt her vagina. Although Joiner introduced Glenn’s name into A.B.’s forensic interview, Mackey opined that A.B.’s disclosures were consistent with those of a child who had been sexually abused. During the interview, A.B. said multiple times that Glenn had touched her “nu-nu.” She stated that she saw Glenn’s penis, and Glenn had touched her with his penis. A.B. also revealed to Smith that Glenn had sexually abused her. In addition, Krystal’s testimony corroborated A.B.’s disclosures. This evidence is sufficient to support Glenn’s convictions.
¶ 62. As for Johnny, Martha and Gloria testified that A.B. had named Johnny as one of her abusers. During the forensic interview, A.B. identified Johnny as someone who had touched her “nu-nu,” and she said that she had seen Johnny’s penis. A.B. also revealed this information to Smith. Specifically, Johnny argues that he could not have had sex with A.B. given his physical condition. There was testimony that it was difficult for Johnny to have sex, not that it was impossible. Krystal testified that she helped Johnny penetrate A.B. “[0]nly slight penetration is required to constitute the offense.” Pryer v. State, 958 So.2d 818, 823 (¶ 13) (Miss.Ct.App.2007) (citing Johnson v. State, 626 So.2d 631, 632-33 (Miss.1993)). This evidence is sufficient to support Johnny’s convictions.
¶ 63. The defendants also attack the credibility of the witnesses. It is a long-standing rule that the credibility of a witness is a question for the jury. Smith v. State, 989 So.2d 973, 984 (¶ 40) (Miss.Ct.App.2008). First, the defendants attack *832 A.B.’s credibility because of inconsistent statements she gave during the forensic interview. Yet, testimony from Martha, Gloria, Shaw, and Smith showed consistency in A.B.’s allegations. Also, the testimony regarding A.B.’s behavior — masturbation, fondling others, and so on — showed that A.B. exhibited physical and mental characteristics of a child who had been sexually abused. Based on this evidence, we find that a reasonable jury could have determined that the defendants were guilty beyond a reasonable doubt.
¶ 64. The defendants also attack Krystal’s credibility, labeling her a mildly retarded drug addict. They mainly criticize Krystal for recanting her innocence and maintain that she fabricated the allegations to receive her plea deal. As evidenced by Krystal’s letters that were admitted into evidence, she changed her story. The defense was allowed to cross-examine her on this point and to question her about the plea agreement. Where there is conflicting evidence, it is within the jury’s province to determine the credibility of the witness. See id. After hearing all of the evidence, the jury resolved any conflicts in the evidence in favor of convicting the defendants. The verdicts are not contrary to the overwhelming weight of the evidence. Thus, we will not distui’b the jury’s verdicts. This issue is without merit.
¶ 65. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY OF CONVICTION OF TIMOTHY JORDAN OF FOUR COUNTS OF SEXUAL BATTERY AND SENTENCE OF LIFE FOR EACH COUNT, WITH THE LIFE SENTENCES TO RUN CONCURRENTLY; ONE COUNT OF GRATIFICATION OF LUST AND SENTENCE OF TEN YEARS; AND ONE COUNT OF CHILD NEGLECT AND SENTENCE OF TEN YEARS, WITH THE TWO TEN-YEAR SENTENCES TO RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO THE LIFE SENTENCES, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.
¶ 66. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY OF CONVICTION OF GLENN GROSE OF THREE COUNTS OF SEXUAL BATTERY AND SENTENCE AS A HABITUAL OFFENDER TO LIFE FOR EACH COUNT AND ONE COUNT OF CHILD NEGLECT AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.
¶ 67. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY OF CONVICTION OF JOHNNY GROSE OF TWO COUNTS OF SEXUAL BATTERY AND SENTENCE OF LIFE FOR EACH COUNT, WITH THE LIFE SENTENCES TO RUN CONCURRENTLY; ONE COUNT OF GRATIFICATION OF LUST AND SENTENCE OF TEN YEARS; AND ONE COUNT OF CHILD NEGLECT AND SENTENCE OF TEN YEARS, WITH THE TWO TEN-YEAR SENTENCES TO RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO THE LIFE SENTENCES, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.
¶ 68. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS, CARLTON AND *833 MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., NOT PARTICIPATING.

. To protect the identity of minor victims of sexual abuse, we substitute fictitious initials for their names.