# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00312-COA

**DEX HUNTER STONE A/K/A DEX H. STONE**          **APPELLANT**
**A/K/A DEX STONE**

**v.**

**STATE OF MISSISSIPPI**                                                **APPELLEE**

DATE OF JUDGMENT:                    02/05/2020
TRIAL JUDGE:                                 HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED:    LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                                  BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                                  BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:                     KASSIE ANN COLEMAN
NATURE OF THE CASE:                   CRIMINAL - FELONY
DISPOSITION:                               AFFIRMED - 04/27/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     A Lauderdale County Circuit Court jury convicted Dex Hunter Stone of sexual battery. The trial court sentenced Stone to serve thirty years in the custody of the Mississippi Department of Corrections (MDOC).

¶2.     Stone now appeals his conviction and asserts the following assignments of error: (1) the trial court erred in failing to declare a mistrial after a prosecution witness commented on Stone's post-*Miranda*[1] silence, and (2) the trial court erred by allowing the State to amend

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Stone's indictment in the middle of the trial.

¶3.    After our review, we find no error. We therefore affirm Stone's conviction and sentence.

**FACTS**

¶4.    Stone was indicted for sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2006).[2] At the time of the indicted offense, Stone was twenty-four years old, and the victim, Nick Turner,[3] was six years old.

¶5.    At a trial held on February 3-4, 2020, the jury heard testimony from Nick regarding the allegations of sexual battery. Nick informed the jury that Stone used to babysit for his neighbors, the Satterfields. Nick stated that he regularly visited the Satterfields' house to play with their children, and Stone was often at the house.

¶6.    Nick testified that in early August 2012, he was playing at the Satterfields' house when Stone called him into the living room. According to Nick, Stone was sitting in a recliner and he instructed Nick to "get up in his lap and stand up." Nick testified that Stone then pulled Nick's pants down and "put [Nick's] private parts in his mouth." Nick testified that Stone asked him not to tell anyone about the encounter.

¶7.    Later that evening, Nick told his mother about the encounter with Stone. Nick's

---

[2] Section 97-3-95(1)(d) provides that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child."

[3] We use a fictitious name for the minor child to protect his identity.

2

mother reported the claim to the Lauderdale County Sheriff's Department. Gypsi Ward, an investigator at the sheriff's department, arranged for Nick to be interviewed by Dr. Olga Kahle, a psychologist and forensic interviewer at the East Mississippi Children's Advocacy Center, Wesley House Community Center Inc. (Wesley House).

¶8. Dr. Kahle testified that during her forensic interview with Nick, he disclosed to her that Stone "put his mouth on my bad spot." The State then played the video of Dr. Kahle's interview with Nick for the jury.

¶9. The jury also heard testimony from Hailey Spears, Nick's neighbor. Hailey testified that in August 2012, she was approximately thirteen years old. Hailey stated that during that time, she lived in Nick's neighborhood and often visited the Satterfields' house. Hailey testified that Stone babysat for the Satterfield children approximately three or four days a week.

¶10. Hailey testified that law enforcement contacted her in January 2013 concerning a sexual assault investigation. Hailey stated that she approached Stone and asked him if "what they were saying was true," referring to the sexual assault investigation. Hailey testified that Stone answered, "Yes." Hailey explained that she then "asked [Stone] what he had done," and she testified that he told her he "had sucked on [Nick's] private areas." Hailey stated that she asked Stone if he knew how much trouble he could get in for his actions, and he answered that he would not get in trouble if no one told. Hailey testified that she later told her aunt and her sister about her conversation with Stone. Hailey also eventually spoke with

3

Nick's mother and law enforcement about her conversation with Stone.

¶11. Investigator Gypsi Ward testified that on January 31, 2013, Nick's mother contacted her and reported the allegations of sexual battery by Stone. Investigator Ward then set up an interview for Nick at the Wesley House. Investigator Ward explained that on the day of the interview, February 4, 2013, she was present at the Wesley House and observed the interview from another room.

¶12. Investigator Ward testified that after the interview, she began collecting statements of other people who had knowledge of the incident. The State asked, "Did you make any attempts to talk to Mr. Stone or do warrants? What did you do with—." Investigator Ward responded, "We did attempt to speak to Mr. Stone, but he requested an attorney." Defense counsel objected, and the trial court sustained the objection. Defense counsel then moved for a mistrial, arguing that a defendant's post-arrest silence cannot be commented on or mentioned in front of a jury. The State argued that Investigator Ward never testified that she arrested Stone or stated that he asked for his attorney post-arrest. The State further clarified, "I did not ask her to talk about the *Miranda*. I was simply trying to inquire about what were the next steps, which in this case was that warrants and affidavits were drafted."

¶13. After hearing arguments, the trial court denied the motion, finding that the State "did not specifically solicit" the comments pertaining to Stone's post-*Miranda* silence or request for an attorney. At defense counsel's request, the trial court instructed the jury to disregard Investigator Ward's testimony that Stone requested an attorney.

4

¶14. Investigator Ward also explained why the affidavit in support of Stone's arrest warrant listed the date of the offense as November 1, 2012. Investigator Ward stated that at the time of the investigation, "the children [interviewed] were not able to give specific dates on when this [incident] actually occurred." Investigator Ward also testified that she did not expect a six-year-old child to be able to provide specifics regarding dates and times of day. She explained that at that age, children "seem to have no concept of time, or days of the week, for that matter." Investigator Ward testified that she had a date range of when the incident occurred, so she selected a date within that time frame to use for the affidavit.

¶15. After the State presented its case, the State moved to amend the indictment to conform with the proof presented at trial; specifically, to extend the time period listed in the indictment. The State explained that the current indictment listed a date range of August 1, 2012, to December 31, 2012, but at trial, Hailey testified that her conversation with Stone regarding his admission of guilt occurred in January 2013. The State therefore requested that the date range be extended until January 30, 2013. The defense objected, and the trial court heard arguments on the matter. After hearing arguments, the trial court allowed the State to amend the indictment to set forth a date range of August 1, 2012, to January 30, 2013. The State then rested its case, and the defense renewed its motion for a mistrial and moved for a directed verdict, which the trial court denied. The defense rested without calling any witnesses.

¶16. The jury returned a verdict finding Stone guilty of the crime of sexual battery in

violation of section 97-3-95(1)(d). The trial court sentenced Stone to serve thirty years in the custody of the MDOC and ordered him to pay $430 in court costs and $1,000 to the Mississippi Child Trust Fund, for a total of $1,430. The trial court ordered Stone's sentence to run consecutively to any other sentence.

## DISCUSSION

**I.** **Whether the trial court erred in not declaring a mistrial after a witness's comment regarding Stone's post-*Miranda* silence.**

¶17. Stone argues that his right to due process and a fair trial were violated by the State when prosecution witness Investigator Ward commented on Stone's post-*Miranda* silence. Stone asserts that Investigator Ward's comment prejudiced him because the jury also heard testimony from Hailey Spears stating that Stone admitted to the accusation of sexual assault. Stone claims that the knowledge of his post-*Miranda* silence gave the jury the impression that he was afraid to speak with the authorities. Stone submits that as a result of the prejudice he suffered by Investigator Ward's comment, the trial court erred in denying his motion for a mistrial.

¶18. "When reviewing challenges to comments on post-*Miranda* silence, we are generally faced with a trial court's denial of a motion for a mistrial, which we review for abuse of discretion." *Martin v. State*, 266 So. 3d 652, 668-69 (¶40) (Miss. Ct. App. 2018). "It is improper and ordinarily, reversible error to comment on the accused's post-*Miranda* silence." *Id*. at 669 (¶40). This Court has clarified that "the mere mention of a defendant's refusal to give a statement does not, in all instances, require reversal." *Id*. We accordingly "review

6

such comments on an individual basis." *Id.*; *see also Birkhead v. State*, 57 So. 3d 1223, 1238 (¶53) (Miss. 2011).

¶19.    At trial, the following exchange occurred during the State's direct examination of Investigator Ward:

> [State]:       Okay. Did you make any attempts to talk to Mr. Stone or do warrants? What did you do with—
>
> [Ward]:        We did attempt to speak to Mr. Stone, but he requested an attorney.
>
> [Defense]:   Objection.
>
> [State]:       Well, I want to start, first of all—
>
> [Court]:      Sustained.
>
> [Defense]:   Mistrial, Judge. They know better than to talk about that.

¶20.    The trial court excused the jury and heard arguments on the motion for a mistrial. Counsel for the State argued that she "did not ask the question with regards to the *Miranda*," explaining, "I specifically was trying to indicate was whether or not [law enforcement] tried to speak to [Stone], and then I followed that up with . . . what their next step was. I was trying to get Investigator Ward to state what happened next." The State also submitted that Investigator Ward "never said that she arrested [Stone] or [that he requested his attorney] post-arrest." During the arguments, the trial court asked Investigator Ward whether Stone was under arrest at the time he requested his attorney. Investigator Ward confirmed that at the time Stone requested his attorney, he was under arrest. A *Miranda* waiver form dated

7

February 15, 2013, indicated that Stone "requested an attorney." The trial court ultimately denied the defense counsel's motion for a mistrial after finding "that the district attorney did not specifically solicit the testimony of Investigator Ward as to Mr. Stone's statement or request for attorney." The trial court then instructed the jury "to disregard the last response" by Investigator Ward.

¶21. The supreme court has explained that while it is ordinarily reversible error to comment on a defendant's post-*Miranda* silence, exceptions to this rule do exist: "Specifically, when the defendant's post-*Miranda* rights are mentioned only once and the judge admonishes the jury concerning the statement, the violation will not result in reversible error." *Gilbert v. State*, 48 So. 3d 516, 522 (¶22) (Miss. 2010) (citing *Higgins v. State*, 502 So. 2d 332, 335 (Miss. 1987); *see also Birkhead*, 57 So. 3d at 1238 (¶53) ("Regarding comments on the failure of a defendant to testify or to remain silent," the supreme court has held that such comments were not reversible error in cases where the trial court instructs the jury to ignore or disregard the comment.); *Blue v. State*, 674 So. 2d 1184, 1215 (Miss. 1996) (finding that any prejudicial effect of the State's comment on the defendant's post-*Miranda* silence "was corrected by the jury instructions"), *overruled on other grounds by King v. State*, 784 So. 2d 884, 889-90 (¶¶21-23) (Miss. 2001); *Strahan v. State*, 729 So. 2d 800, 807 (¶¶29-30) (Miss. 1998) (finding no reversible error where the trial court instructed the jury to ignore the State's comment on the defendant's post-*Miranda* silence). The supreme court has stated that "when a trial court instructs the jury, it is presumed the jurors follow the instructions of

8

the court." *Moffett v. State*, 49 So. 3d 1073, 1108 (¶115) (Miss. 2010).

¶22.    Stone admits that the trial court did instruct the jury to disregard Investigator Ward's comment, but he argues that the trial court's limiting instruction was insufficient to remove the taint of the comment.  Stone asserts that Investigator Ward's comment on his post-*Miranda* silence prejudiced him because the jury also heard Hailey's testimony that Stone admitted to the accusation of sexual assault.  Stone claims Investigator Ward's comment gave the jury an "unjustified" impression that he was afraid to speak with the authorities and therefore tainted the verdict.

¶23.    As stated, this Court reviews comments regarding a defendant's post-*Miranda* silence "on an individual basis." *Martin*, 266 So. 3d at 669 (¶40).  When determining if "a comment on a defendant's post-*Miranda* silence amounts to reversible error," we must examine "whether the natural and probable effect of the statement is to create an unjust prejudice against the accused resulting in a decision influenced by prejudice." *Id*. (emphasis omitted). We recognize that "a trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial." *Bell v. State*, 303 So. 3d 22, 26 (¶10) (Miss. Ct. App. 2020) (quoting *Flora v. State*, 925 So. 2d 797, 804 (¶5) (Miss. 2006)), *cert. denied*, 303 So. 3d 418 (Miss. 2020).  "Unless serious and irreparable damage results from an improper comment, the judge should admonish the jury then and there to disregard the improper comment." *Id*. (internal quotation marks omitted).  We now turn to examine "whether the

9

natural and probable effect"of Investigator Ward's comment "creat[ed] an unjust prejudice against [Stone]" that influenced the jury's decision. *Martin*, 266 So. 3d at 669 (¶40) (emphasis omitted).

¶24. The record reflects that during the trial, Investigator Ward's comment was the sole reference to Stone's post-*Miranda* silence. The record also supports the trial court's finding that "the district attorney did not specifically solicit the testimony of Investigator Ward as to Mr. Stone's statement or request for attorney" and that the comment "was unsolicited." We further find that Investigator Ward's comment did not indicate whether Stone was under arrest at the time he requested his attorney. The trial court later inquired, out of the presence of the jury, whether Stone was under arrest at the time he requested his attorney. The trial court ultimately denied Stone's motion for a mistrial and instructed the jury to disregard Investigator Ward's comment.

¶25. In *Swinney v. State*, 241 So. 3d 599, 608 (¶27) (Miss. 2018), the supreme court held that "no manifest miscarriage of justice [occurred]," and "the fairness, integrity, or public reputation of the judicial proceeding was [not] seriously affected" by a police officer's testimony that the defendant "declined to interview" upon the request of the police officer. Similar to the facts of the case before us, the supreme court found that "it is not 'plain, clear, or obvious' that the testimony actually referenced post-*Miranda* silence." *Id*. at 609 (¶33). The supreme court also determined that "the State did not intentionally elicit [the police officer's] comment, and it was not directly responsive to the State's question." *Id*. at (¶34).

10

The supreme court stated that "[the police officer's] comment was the sole reference over the course of [the] trial regarding [the defendant's] choice to remain silent, and the State did not suggest to the jury that [the defendant] was guilty because he declined to interview." *Id*.

¶26.  In *Gilbert*, 48 So. 3d at 521 (¶19), the defendant moved for a mistrial after a police officer testified that the defendant exercised his *Miranda* rights.  The supreme court held that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial because "there was only one mention of [the defendant's] exercise of his *Miranda* rights," and "the trial judge promptly admonished the jury to disregard [the police officer's] comment." *Id*. at 523 (¶24).

¶27.  Additionally, in *Martin*, 266 So. 3d at 669 (¶41), this Court determined that an investigator's comment on a defendant's post-*Miranda* statement did not "create an unjust prejudice which influenced the jury's decision" where "there is ample evidence in the record to support the jury's decision to convict [the defendant]."  Similarly, in the present case, we find that "there is ample evidence in the record to support the jury's decision to convict [Stone]." *Id*.  The jury heard Nick's testimony that Stone sexually assaulted him.  The jury also heard testimony from Hailey stating that Stone admitted to her that he sexually assaulted Nick.

¶28.  After our review, we find that Investigator Ward's comment did not prejudice his right to a fair trial.  The comment was the sole reference to Stone's post-*Miranda* silence, and we find that Investigator Ward did not specify to the jury whether Stone was under arrest at the

11

time he requested his attorney. Furthermore, the trial court instructed the jury to disregard the comment. We therefore find that the trial court did not abuse its discretion by denying Stone's motion for a mistrial.

**II.** **Whether the trial court erred in allowing the amendment of the indictment mid-trial.**

¶29. Stone argues that the trial court erred in allowing the State to amend Stone's indictment mid-trial. Stone states that he received no notice prior to trial that he would be defending against charges of conduct that extended into January 2013, and therefore the amendment of his indictment materially altered and otherwise prejudiced his defense.[4]

¶30. We apply a de novo standard when reviewing a trial court's decision to allow an amendment to an indictment. *Williams v. State*, 131 So. 3d 1174, 1176-77 (¶6) (Miss. 2014). An amendment to an indictment "is permissible if it does not materially alter facts that are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Blackwell v. State*, 273 So. 3d 801, 806 (¶11) (Miss. Ct. App. 2019). The supreme court has stated that "[t]he test for whether an amendment to the indictment will prejudice the defense

---

[4] The State asserts that Stone raises for the first time on appeal the argument that the timing of the amendment deprived him of the opportunity "to investigate and prepare any alibi defense he might otherwise have had." However, our review of the transcript shows that although Stone objected and stated that "[a] key element of our defense is that the totality of the facts in this case are unreliable," he also asserted that "[a]mendment may be allowed only if the defense is afforded a fair opportunity to present a defense and is not unfairly surprised" and argued "there's no way to effectively defend against all of those dates."

is whether the defense as it originally stood would be equally available after the amendment is made." *Eakes v. State*, 665 So. 2d 852, 859-60 (Miss. 1995).

¶31. Prior to trial, Stone's indictment charged as follows:

> on or about and between August 1, 2012, and December 31, 2012, [Stone] did wilfully, purposely, unlawfully, and feloniously engage in sexual penetration with [Nick Turner] (DOB: [March] 2006), a child who was at the time in question under the age of 14 years, and [Stone] (DOB: [March] 1998) was at the time 24 months older than [Nick Turner], by performing oral sex on [Nick Turner] by putting the child's penis in his mouth, in violation of [s]ection 97-3-95(1)(d).

The record reflects that after the jury heard testimony from the State's final witness, the State made a motion requesting the trial court to amend Stone's indictment to conform with the proof presented at trial, namely, to extend the date in the indictment from December 2012 to January 30, 2013. The State explained that the indictment listed a time frame of August 1, 2012, through December 30, 2012. The State asserted that Hailey testified "about an act" in January 2013, and the State argued that January 2013 should therefore be included in the time frame listed on the indictment.

¶32. "An indictment may be amended to conform to the evidence, so long as the amendment is one of form, not substance, and does not prejudice the defense." *Odom v. State*, 73 So. 3d 550, 552 (¶11) (Miss. Ct. App. 2011). This Court has clarified that "[a]mendments [to an indictment] involving a change in date . . . are merely changes in form and not substance, 'unless time is an essential element or factor in the crime.'" *Spears v. State*, 294 So. 3d 637, 644 (¶20) (Miss. Ct. App. 2019) (quoting *Baine v. State*, 604 So. 2d

13

258, 260 (Miss. 1992)). We recognize that "[t]ime is not an essential element of the crime[] of sexual battery[.]" *Jordan v. State*, 80 So. 3d 817, 827 (¶38) (Miss. Ct. App. 2010) (citing Miss. Code Ann. § 97-3-95(1)(d)). Therefore, we find that because the State's amendment to the indictment in this case was one of form, and not of substance, "it was allowable." *Id*. Furthermore, Mississippi Code Annotated section 99-7-5 (Rev. 2015) further provides:

> An indictment for any offense shall not be insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened, nor for the want of a proper or perfect venue.

*Id*.

¶33. Stone acknowledges that "an allegation as to the time of the offense is not an essential element of the offense charged in an indictment, and 'within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'" (Citing *Daniels v. State*, 742 So. 2d 1140, 1143 (¶10) (Miss. 1999), *overruled on other grounds by Wilson v. State*, 194 So. 3d 855, 867 (¶41) (Miss. 2016)). However, Stone maintains that a defendant must be given notice of the charge he is to defend against, and he did not receive prior notice that he would have to defend against allegations of conduct from January 2013. Stone argues that as a result, "he did not have time to investigate and prepare any alibi defense he might otherwise have had." We now turn to examine whether the amendment to the indictment prejudiced Stone's defense. *See Eakes*, 665 So. 2d at 859-60.

¶34. This Court has held that "specific dates are not required in sexual abuse indictments

so long as the defendant is fully and fairly advised of the charges against him." *Frei v. State*, 934 So. 2d 318, 326 (¶20) (Miss. Ct. App. 2006). In *Eakes*, 665 So. 2d at 860, the supreme court reviewed the defendant's argument that his indictment was defective for failing to set forth the specific dates of his alleged crimes of sexual penetration against the victim. The supreme court stated that the defendant's indictment set forth that the crimes occurred "'on, about or between' December 1, 1990 and December 24, 1990; February 1, 1991 and April 30, 1991; and 'on or about' May 11 and 12, 1991." *Id*. The supreme court observed that "[a]t trial[,] [the victim] was more specific, claiming [the defendant] had abused her on December 26, 1990, January 26, 1991, and March 16, 1991." *Id*. The supreme court stated that the victim "also provided particular reasons and/or events which caused her to be at [the defendant's] home on these dates." *Id*. The supreme court found that "[t]he dates testified to are close to the dates charged in the indictment" and accordingly held that because the defendant "was fully and fairly advised of the charges against him, the lack of specific dates in the indictment is not fatal." *Id*.

¶35. In *Jordan*, 80 So. 3d at 826 (¶35), the State amended each count of the defendants' indictment to expand the date range of the alleged offense from one particular month to several months. The defendants asserted that the trial court erred in allowing the amendment because "changing the dates was prejudicial to their defense." *Id*. Upon review, this Court found that "the defendants were not prejudiced by the amendment to the indictment," explaining that the defendants' defenses "were simply that they had not sexually abused [the

15

victim,] . . . [and] [t]his defense could have been presented no matter what dates were alleged in the indictment." *Id*.

¶36.   Similarly, in *Washington v. State*, 800 So. 2d 1140, 1145 (¶13) (Miss. 2001), the defendant asserted that he was prejudiced by the failure of his indictment to provide an accurate date of his alleged crime. The defendant claimed that "he was not given an opportunity to accurately investigate an alibi" and that the correct date "'may' have helped his case." *Id*. at (¶¶13-14). The supreme court rejected this argument and found that the defendant failed to "actually allege prejudice," explaining that "'[m]ay' is not good enough to warrant reversal of a conviction." *Id*. at (¶14).

¶37.   As stated, "[t]he test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." *Eakes*, 665 So. 2d at 859-60. In the present case, Stone's trial defense was that the allegations of sexual battery were not true. As in *Jordan*, we find that "this defense could have been presented no matter what dates were alleged in the indictment." *Jordan*, 80 So. 3d at 827 (¶38). On appeal, Stone asserts that the lack of prior notice of the amended dates prejudiced him because "he did not have time to investigate and prepare any alibi defense he might otherwise have had." We find that Stone's assertion that he "might" have had an alibi defense "is not good enough to warrant reversal of [his] conviction." *Washington*, 800 So. 2d at 1145 (¶13).

¶38.   After our review, we find that the Stone's indictment fully and fairly advised him of

16

the charges against him. Time is not an essential element of the crime of sexual battery, and the State's amendment to the indictment to conform with the proof—i.e., to expand the date range of the alleged crime to January 2013—was an amendment as to form and therefore allowable. Furthermore, we find that Stone was not prejudiced by the amendment. Accordingly, we find that the trial court did not err in allowing the State to amend Stone's indictment.

¶39. Finding no error, we affirm Stone's conviction and sentence.

¶40. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**