IN THE SUPREME COURT OF MISSISSIPPI

NO. 2009-KA-01539-SCT

*JOHN WILLIS GILBERT, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2009 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: LESLIE S. LEE |
| | PHILLIP W. BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/10/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     John Gilbert, Jr. was convicted of aggravated assault stemming from an incident between him and Alice Stapleton. Gilbert was sentenced as a habitual offender to life in prison without parole under Mississippi Code Section 99-19-83 (Rev. 2007). After the trial judge denied Gilbert's motion for judgment notwithstanding the verdict, or in the alternative, a new trial, Gilbert perfected this appeal, alleging errors at the trial-court level. Finding no error, we affirm the judgment of the Circuit Court of Coahoma County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Gilbert and Stapleton were romantically involved prior to the altercation between them. At one point, Gilbert and Stapleton lived together, despite Gilbert's being married to another woman. Eventually, Stapleton moved out of their apartment, and Gilbert frequently visited Stapleton at her new apartment.

¶3.     The altercation between Gilbert and Stapleton occurred on December 18, 2008. Gilbert, Stapleton, and Stapleton's daughter, Jamie Stapleton (Jamie), all were in Stapleton's apartment watching television. Stapleton was lying on a sofa under some sheets when the altercation began. The testimony as to what occurred during the altercation is in dispute. Gilbert testified that, while he was leaning over Stapleton to kiss her goodbye, she pulled out a knife and swung it at him. He testified that he and Stapleton struggled over the knife and that he eventually took the knife from Stapleton, dropped it, and ran out the door.

¶4.     Stapleton testified that Gilbert stabbed her while she was lying on the sofa. She testified that Gilbert first stabbed her in the ear while she was lying down and then in the chest, left arm, and back of the neck after she had stood up. Stapleton also testified that she and Gilbert had struggled over the knife and that he eventually had run out the back door of the apartment.

¶5.     Jamie testified that she fell asleep while watching television but woke up when she heard her mother and Gilbert struggling. She testified that she saw Gilbert stab Stapleton and that Stapleton attempted to fight off Gilbert. Jamie then began hitting Gilbert and told him to stop.

2

¶6. Officer Sims, a criminal investigator with the Clarksdale Police Department, was assigned to investigate the case. Sims testified a large amount of blood and several blood-soaked bandages were on the floor of Stapleton's apartment. After viewing the scene, Sims went to Gilbert's home and knocked on his door. When Gilbert came to the door, his clothes had blood on them, and he had a large cut on his hand. Sims placed Gilbert under arrest and took him to the police department.

¶7. At trial, Sims testified that Gilbert had refused to speak with him after he had given Gilbert his *Miranda* rights.[1] Defense counsel objected to this testimony and moved for a mistrial. The trial judge sustained the objection, overruled the motion for a mistrial, and admonished the jury to disregard Sims's statement.

¶8. Sims also bagged Gilbert's belt, shirt, and pants and took the items to the Mississippi Crime Laboratory, along with blood samples from both Stapleton and Gilbert. A forensic pathologist testified that seven of the eight stains on Gilbert's clothing matched his DNA and one matched Stapleton's DNA. During his testimony, the forensic pathologist referred to Stapleton as the "victim." Defense counsel previously had filed a motion *in limine* to prohibit testimony referring to Stapleton as the "victim." The trial court denied this motion but granted Gilbert a continuing objection to the use of the term "victim."

¶9. The jury found Gilbert guilty of aggravated assault. Gilbert then moved for judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial, and the trial court

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 467-68, 471, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

denied this motion. At the sentencing hearing, the trial court granted the State's motion to amend the habitual-offender portion of Gilbert's indictment to reflect the correct crimes for which Gilbert previously had been convicted. Gilbert was sentenced to life in prison as a habitual offender under Mississippi Code Section 99-19-83. *See* Miss. Code Ann. § 99-19-83 (Rev. 2007).

## DISCUSSION

¶10. Gilbert presents four issues for this Court's consideration: (1) whether the trial court erred in denying Gilbert's motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial; (2) whether the trial court erred in denying Gilbert's motion for mistrial; (3) whether the trial court erred in allowing testimony referring to Stapleton as the "victim;" and (4) whether Gilbert's sentencing as a habitual offender under Mississippi Code Section 99-19-83 was proper.

**I.     WHETHER THE TRIAL COURT ERRED IN DENYING GILBERT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL.**

¶11. Gilbert asserts that the trial court erred in failing to grant his motion for JNOV because the evidence presented by the State was insufficient. Also, Gilbert asserts that the trial court erred in failing to grant his motion for new trial because the jury verdict was against the great weight of the evidence.

*A. Gilbert's Motion for Judgment Notwithstanding the Verdict*

¶12. Gilbert claims the trial court erred in denying his motion for JNOV because the State did not present sufficient evidence to meet the required burden of proof. In analyzing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the prosecution and asks if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Jackson v. Va.*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A person is guilty of aggravated assault if he "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2006).

¶13. Gilbert argues that no rational trier of fact could have found him guilty, because the witness testimony offered against him was biased and, as a result, the testimony was not credible. Two of the witnesses offered by the State against Gilbert were Stapleton and her daughter, Jamie. First, Gilbert asserts that Stapleton's testimony was biased because she was motivated to protect herself from potential prosecution resulting from the altercation with Gilbert and because she was jealous of Gilbert's relationship with his wife. Secondly, Gilbert claims Jamie's testimony was biased because she was pregnant and was motivated to testify in favor of her mother in order to have a place to live. Further, Gilbert argues that the testimony of Stapleton and Jamie was inconsistent with their pretrial statements and the evidence found at the scene.

¶14. The State presented photographic evidence of Stapleton's injuries, and Stapleton and Jamie both testified that Gilbert had stabbed Stapleton. This Court may not "pass upon the

5

credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." *Massey v. State*, 992 So. 2d 1161, 1163 (Miss. 2008) (quoting *Davis v. State*, 568 So. 2d 277, 281 (Miss. 1990)).

¶15. When the evidence is viewed in the light most favorable to the prosecution, "a rational trier of fact could have found" beyond a reasonable doubt that Gilbert was guilty of aggravated assault. *Bush*, 895 So. 2d at 843 (quoting *Jackson*, 443 U.S. at 315). Thus, the trial court did not err when it denied Gilbert's motion for JNOV attacking the sufficiency of the evidence.

### B. Gilbert's Motion for New Trial

¶16. Gilbert claims the trial court erred in denying his motion for new trial because the verdict was against the great weight of the evidence. When reviewing the denial of a motion for new trial, this Court will "only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). The Court should grant a new trial only "in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (quoting *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000)).

¶17. Both Stapleton and Jamie testified that Gilbert had assaulted Stapleton. Also, Stapleton's blood was found on Gilbert's clothing, and Stapleton had five wounds resulting from the attack. This is not an exceptional case "in which the evidence preponderates

6

heavily against the verdict." *Id.* (quoting *Amiker*, 796 So. 2d at 947). Accordingly, the trial judge did not err in denying Gilbert's motion for a new trial.

¶18. In sum, we find that the trial judge did not err when he dismissed Gilbert's motion for judgment notwithstanding the verdict, or in the alternative, a new trial. Thus, there is no merit to this issue.

**II.   WHETHER THE TRIAL COURT ERRED IN DENYING GILBERT'S MOTION FOR MISTRIAL.**

¶19. Gilbert claims that the trial court erred when it denied his motion for mistrial after Officer Sims testified to Gilbert's exercise of his *Miranda* rights. Specifically, Officer Sims testified that he had read Gilbert his *Miranda* rights and then Gilbert had "refused to speak with [him] about the incident." Gilbert's attorney promptly objected to the testimony and moved for mistrial. The trial court sustained the objection, denied the motion for mistrial, and then admonished the jury to disregard Officer Sims's statement.

¶20. The standard of review for denial of a motion for mistrial is abuse of discretion. *Rollins v. State*, 970 So. 2d 716, 720 (Miss. 2007) (citing *Withers v. State*, 907 So. 2d 342, 352 (Miss. 2005)). "The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Gossett v. State*, 660 So. 2d 1285, 1290 (Miss. 1995) (citing URCCC 5.15). The trial court has "considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect." *Id.* (citing *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)). If the trial judge determines that the error did not result in

7

substantial and irreparable prejudice, the "judge should admonish the jury to disregard the impropriety in order to cure its prejudicial effect." *Id.* at 1291 (citing ***Perkins v. State***, 600 So. 2d 938, 941 (Miss. 1992)).

¶21.　Gilbert asserts that Officer Sims's testimony regarding Gilbert's invoking his right to silence violated his constitutional right to a fair trial. Officer Sims testified to the events that occurred after he had located Gilbert. The following is the relevant part of the testimony:

> [Prosecutor]: "Once you – so once you located him, what, if anything, did you do?"
>
> Officer Sims: "Well, I knocked on the door of the residence, and a gentleman opened the door which was not Mr. Gilbert. I asked him if Mr. Gilbert was at the residence. He said that he was. He kind of went back further in to the residence. Mr. Gilbert came to the door. He had blood-stained clothing. He had a large cut on his hand. At that time, I placed him under arrest, took him to the Clarksdale Police Department and read him his *Miranda* Rights and attempted to interview him, and he refused to speak with me about the incident."
>
> [Gilbert's Attorney]: "I'm going to object to this."
>
> Court: "I sustain the – well, exactly what are you objecting to?"
>
> [Gilbert's Attorney]: "I'm objecting to his – may we approach the bench, your Honor?"
>
> Counsel approached the bench.
>
> Court: "Sure."
>
> [Gilbert's Attorney]: "The officer says that he – I'm objecting to the fact that the officer is testifying that the defendant refused to talk to him. He had no obligation to talk to him."

8

Court: "Counsel is expanding on some of his answers. He needs to restrict his answers to the questions that are asked. You know, he simply asked – I mean he advised him of his *Miranda* Rights. That answers the question."

[Prosecutor]: "I was trying not to lead, but with the Court's indulgence, I'll lead a little more."

Court: "I'll give you some limited latitude."

[Prosecutor]: "I'm not trying."

[Gilbert's Attorney]: "I would like again to move for a mistrial."

Court: "I'll sustain the objection, but I will overrule the objection for a mistrial."

All counsel return from the bench.

Court: "The jury will disregard the last comment with regard to the defendant's statement. The defendant can -- actually they have a constitutional right to speak or not to speak, and if a defendant exercises his constitutional right not to speak, that is his right."

¶22. "It is improper and ordinarily, reversible error to comment on the accused's post-*Miranda* silence." *Emery v. State*, 869 So. 2d 405, 408 (Miss. 2004) (citing *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990)). However, there are exceptions to this general rule. *Id.* Specifically, when the defendant's post-*Miranda* rights are mentioned only once and the judge admonishes the jury concerning the statement, the violation will not result in reversible error. *Higgins v. State*, 502 So. 2d 332, 335 (Miss. 1987); *see also Williams v. State*, 445 So. 2d 798, 806 (Miss. 1984) (holding that the trial court did not commit reversible error when it refused to grant defendant's motion for mistrial after a testifying police officer

referred to defendant's exercise of *Miranda* rights only once and the judge admonished the jury to disregard the remark)).

¶23.     In *Higgins*, the testifying officer stated that after he had given the defendant his *Miranda* rights, the defendant had stated "I want to talk to my lawyer." *Higgins*, 502 So. 2d at 334.  The defense attorney then objected and moved for a mistrial.  *Id.*  The trial judge sustained the objection and then admonished the jury to disregard the officer's statement. *Id.*  This Court found that, because there was only a single reference to the defendant's exercise of his *Miranda* rights and the judge had admonished the jury to disregard the testimony, the statement had not resulted in reversible error.  *Id.* at 335.

¶24.     Similar to *Higgins* and *Williams*, in the present case, there was only one mention of Gilbert's exercise of his *Miranda* rights.  Further, the trial judge promptly admonished the jury to disregard Officer Sims's comment.  Accordingly, the trial judge did not abuse his discretion when he denied Gilbert's motion for a mistrial; therefore, we find this issue to have no merit.

### III.     WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY REFERRING TO ALICE STAPLETON AS THE "VICTIM."

¶25.     When this Court considers on appeal an assignment of error directed at the trial court's admission or exclusion of evidence, our standard of review is abuse of discretion. *Clark v. State*, 40 So. 3d 531, 542 (Miss. 2010) (citing *Evans v. State*, 25 So. 3d 1054, 1057 (Miss. 2010)).

10

¶26. Gilbert asserts that the trial court erred by allowing an expert witness for the State to refer to Stapleton as the "victim." Gilbert previously had filed a motion *in limine* requesting that the trial court disallow any testimony referring to Stapleton as the "victim;" however, the trial court denied this motion. But the trial court granted Gilbert a continuing objection to the use of the term "victim" throughout the trial.

¶27. During Gilbert's trial, an expert witness testified to the results of DNA tests conducted on the blood stains on Gilbert's clothing. Gilbert asserts that the trial court erred in allowing the following testimony: "There was one blood stain found on the pants that is consistent with the referenced blood stain sample of the victim. Therefore, Alice Stapleton is not excluded as a DNA donor to this sample."

¶28. While this Court has not reviewed the issue of a witness referring to an accuser as "the victim," we find the reasoning of the Court of Appeals in *Taconi v. State*, 912 So. 2d 154, 156-57 (Miss. Ct. App. 2005), to be sound, and accordingly adopt the holding. In *Taconi,* the Court of Appeals held that it was not reversible error for a prosecutor to refer to the accuser as the "victim," despite the trial court previously having granted a motion *in limine* on those grounds. *Id.*

¶29. We find that the trial court did not abuse its discretion in allowing the testimony referring to Stapleton as the "victim." The trial court previously had denied Gilbert's motion *in limine* regarding the term "victim," and the use of the word was isolated and not emphasized. Therefore, we find no merit in this assignment of error.

**IV. WHETHER GILBERT'S SENTENCING AS A HABITUAL OFFENDER UNDER MISSISSIPPI CODE SECTION 99-19-83 WAS PROPER.**

¶30. Gilbert was sentenced to life in prison as a habitual offender under Mississippi Code Section 99-19-83 (Rev. 2007). Gilbert asserts two reasons in support of his claim of error regarding his sentence. First, Gilbert claims that the State's amendment to his indictment was one of substance rather than form. Second, Gilbert claims that the State's speculation as to the meanings of abbreviations contained within certain documents resulted in a failure of the State to meet its burden of proof at the sentencing hearing.

*A. Amendment of the Indictment*

¶31. "The question of whether an indictment is fatally defective is an issue of law and enjoys a relatively broad standard of review." *Conley v. State*, 790 So. 2d 773, 781 (Miss. 2001) (citing *Peterson v. State*, 671 So. 2d 647, 652 (Miss. 1996)). Indictments may be amended only as to form, never substance. *Evans v. State*, 813 So. 2d 724, 728 (Miss. 2002) (quoting *Mitchell v. State*, 739 So. 2d 402, 404 (Miss. Ct. App. 1999)). An amendment regarding the habitual-offender status of an indictment is permissible, as it affects only sentencing and not substance. *Burrell v. State*, 726 So. 2d 160, 162 (Miss. 1998).

¶32. Gilbert's original indictment listed four offenses in the habitual-offender section: intimidating a witness, unlawful use of a phone, obstructing an officer, and attempted homicide. All convictions occurred in Wisconsin. However, Gilbert was not convicted of attempted homicide in Wisconsin, because he had pleaded guilty to a lesser charge of first-degree reckless endangerment. At the sentencing hearing in today's case, the State moved

to amend the indictment to reflect the conviction of first-degree reckless endangerment, rather than attempted homicide. Gilbert's original indictment contained the following language:

> and upon conviction the said defendant is hereby charged under MCA § 99-19-83 to be sentenced to life imprisonment, and/or under MCA § 99-19-81 to be sentenced to the maximum term of imprisonment prescribed for such felony, namely, twenty (20) years, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation; in that the said defendant shall, then and there have been convicted at least twice previously of a felony or federal crime upon charges separately brought and arising out of separate incidents at different times, and shall have been sentenced to and served separate terms of one (1) year or more in this state or elsewhere; and to the extent that the specifics of said convictions and sentences are known to the Grand Jury at this time, they are more particularly described as follows:

> . . .

> the above specifics may be and shall be amended whether by addition, deletion, substitution, or in any other manner whatsoever as many times as necessary to correctly state the specifics of any and all convictions, including, but not limited to the above, relevant to the above charge that the defendant shall be sentenced under MCA § 99-19-83 and/or MCA § 99-19-81.

¶33.     In *Lacey v. State*, 629 So. 2d 591, 594 (Miss. 1993), this Court found no error in the trial court's permitting an amendment to the indictment to reflect the actual crimes for which the defendant previously had been convicted.  In *Lacey*, the defendant's original indictment listed three Nevada convictions for burglary, conspiracy to commit burglary, and attempted grand larceny. *Id.*  The indictment was amended to reflect the actual crimes for which the defendant was convicted: *attempted* burglary, conspiracy to commit *robbery*, and attempted grand larceny. *Id.*  This Court held that the trial court did not err in allowing these

13

amendments, because the amendments did not deprive the defendant of fair notice or impair his ability to defend. *Id.* at 595.

¶34. Similar to *Lacey*, the amendment to Gilbert's indictment reflected the actual crime for which he was convicted. This amendment affects only sentencing, not the substance of Gilbert's indictment. Accordingly, the trial court did not err when it allowed the amendment.

     *B. Burden of Proof Under Mississippi Code Section 99-19-83*

¶35. The State must prove habitual-offender status beyond a reasonable doubt. *Dalgo v. State*, 435 So. 2d 628, 630-31 (Miss. 1983). The State charged Gilbert as a habitual offender under Section 99-19-83, which reads as follows:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (Rev. 2007).

¶36. Gilbert claims that the State did not meet its burden of proof because it speculated as to the meaning of abbreviations in certain documents used to enhance the sentence under the habitual-offender statute. The trial court and the prosecutor discussed the meaning of some abbreviations contained in these documents during the sentencing hearing. Specifically, the trial court and prosecutor discussed whether "int." meant "intentional," if "cond." meant "conditional," and if "inj." meant "injury."

14

¶37. The trial court stated that it was satisfied that the State had met its burden of proof concerning the requirements of Section 99-19-83 such that Gilbert should be sentenced to life without parole as a Section 99-19-83 habitual offender. The trial court found that Gilbert previously had been convicted of at least two felonies, intimidation of a witness and reckless endangerment; that Gilbert had served one year or more for each crime; and that reckless endangerment was a crime of violence. The trial court's judgment of conviction and sentence stated that Gilbert had been:

> convicted at least twice previously of felony crimes in the State of Wisconsin, upon charges separately brought and arising out of separate incidents at different times, and on each said previous conviction the defendant was sentenced to and served separate terms of one (1) year or more in the State of Wisconsin penal institutions, at least one of such prior felonies also being a crime of violence.

¶38. We find from the record before us that the trial court did not err in finding that the State had presented sufficient evidence showing that Gilbert had met the requirements of Section 99-19-83. The discussion between the State and the trial court as to the meanings of some abbreviations in the sentencing documentation did not show that the State had failed to meet its burden of proof. As to Gilbert's conviction of first-degree reckless endangerment, the Wisconsin documents clearly reveal that Gilbert was convicted of "[r]eckless endanger 1st Deg; Use of Weapon in Crime." Therefore, the trial court did not err in sentencing Gilbert as a habitual offender under Section 99-19-83.

¶39. Based on our discussion on this issue, we find no merit in this assignment of error.

**CONCLUSION**

¶40. For the reasons stated, we affirm John Willis Gilbert, Jr.'s conviction and sentence as imposed by the Coahoma County Circuit Court.

¶41. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF LIFE IMPRISONMENT, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION. SENTENCE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**