CARLTON, J.,
for the Court:
¶ 1. Cedric Russell appeals his conviction in the Hinds County Circuit Court of one count of aggravated assault and one count of possession of a firearm by a convicted felon and his sentence, as a habitual offender, to two terms of life in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole or probation. On appeal, Russell *533 asserts the following issues as assignments of error: (1) the indictment should have been dismissed for failure to provide a speedy trial; (2) the amended motion to amend the indictment to allege sentence enhancement as a habitual offender should not have been granted due to prosecutorial vindictiveness; (3) the State committed a discovery violation; therefore, Russell should not have been sentenced as a habitual offender; (4) the evidence was insufficient to sentence Russell as a habitual offender; (5) Russell was improperly sentenced as a habitual offender; (6) Russell was denied a fair and impartial trial; and (7) the circuit court erred in denying Russell’s Batson objection regarding the State’s use of peremptory challenges. Finding no error, we affirm the circuit court’s judgment.
FACTS
¶ 2. On December 19, 2006, Michael Porter arrived at his girlfriend’s house at approximately 5:00 or 6:00 p.m. Porter’s girlfriend, Lawanda Hawkins, her sister, their mother, children, and Russell were all present in the home.
¶ 3. At trial, Porter stated that he left the house to get a bottle of gin from his car, which was parked in the driveway. Porter testified that Russell followed him outside. Porter opened his car, leaned over the front seat, and reached over to get the gin from the back floorboard. While he was in the car, Porter was shot twice in the leg. Porter crawled out of the vehicle, stood up, and walked back into the house. Officers from the Jackson Police Department arrived on the scene, and Porter was taken to University of Mississippi Medical Center. Police officers found 9mm shell casings in the front of the house.
¶ 4. On December 21, 2006, police officers arrested Russell, and he was subsequently indicted on August 16, 2007, for aggravated assault and for possession of a firearm as a convicted felon. On March 10, 2008, the Hinds County District Attorney’s Office filed its motion to amend the indictment to sentence Russell as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev.2007), stating that Russell had two prior felony convictions, including a crime of violence.
¶ 5. At trial, Porter testified that he told police everything that occurred prior to the shooting, but he admitted that he failed to inform the police that he had a 9mm pistol in his car when he was shot. Vicki Hawkins, Lawanda’s sister, testified that Porter always carried a gun in his car. She stated that she observed both Porter and Russell go outside, but she testified that when she went outside later, she did not see Russell. Vicki and Lawanda both testified that they did not see who had fired the shots.
¶ 6. Porter testified that he noticed that Russell had a pistol in his pocket while they were inside Hawkins’s home, but he did not say anything about it to Russell. However, Porter admitted at trial that he never told the police that he had seen a pistol in Russell’s pocket. Porter also testified that he did not see Russell shoot the pistol.
¶ 7. Russell testified that prior to the shooting, he went on the front porch of the house to call a friend to pick him up. He stated that someone came by the house while he was outside and asked if Porter was inside the house. Russell testified that one of his friends arrived and picked him up before any shots were fired. Russell denied shooting Porter.
¶ 8. After a trial held on January 27-30, 2009, Russell was found guilty of one count of aggravated assault and one count of possession of a firearm by a convicted *534 felon. Prior to sentencing, the State submitted its amended motion to amend the indictment to sentence Russell as an habitual offender, seeking to add two additional felony convictions for consideration in support of sentencing Russell under section 99-19-83. The addition of the two convictions resulted in four prior convictions in support of habitual offender sentencing. The motion was stamped “filed,” but the circuit clerk did not sign the motion, nor does it appear on the circuit court docket. On January 30, 2010, the circuit court sentenced Russell to life in the custody of the MDOC without parole or probation, with the two counts to be served concurrently.
¶ 9. Russell filed a motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, for a new trial. The circuit court denied both of these post-trial motions. Russell now appeals.
DISCUSSION
I. Speedy Trial
¶ 10. On the day of trial, during the hearing on pretrial motions, the defense presented its motion to set aside the order denying the pro se motion to dismiss for lack of a speedy trial. The prosecution, in responding to this motion, sufficiently showed that Russell had suffered no statutory or constitutional violation:
... I think the facts are clear, your Honor, that the defendant was arrested December 26, 2006. He was indicted August 26, 2007, arraigned November 9, 2007. And his case was set for trial March 24, 2008.
All of these offenses of which indictments are presented to this Court were supposed to be tried within 270 days according to the [sic] 99-17-1 of the Mississippi Code. And his trial was certainly set within that time.
And your Honor, the reason that case was delayed was because the defendant asked for it. I mean, any delay that we have after that goes against the defendant. And I mean, I understand that [Russell’s attorney] Mr. Boykin needed to get him evaluated. That’s not the issue. I understand why he did what he did. But certainly the delay is on the defense because he wanted a mental evaluation. And he got one.
And as soon as he got one, at least within the next term, if not the second term of court, he’s set for trial and we’re ready to go today. There is no issue there. And number two is, Judge, what prejudice is he served — I mean, has come to him. You know, there is no prejudice whatsoever. He has no witnesses that aren’t available anymore. There’s nothing that’s missing.
I mean, regardless, we are within the timeframe as constitutionally and statutorily provided. And I would note, your Honor, that he asked for the speedy trial before he was even indicted.
So regardless, we’re within the statutory and constitutional confines of the speedy trial. Secondly, he’s shown absolutely no prejudice whatsoever as to the delay. And thirdly, I’d say any delay that’s happened is mostly because of the defendant.
¶ 11. Upon hearing and considering the motion, the circuit court ruled that “the motion is not well taken and should be and hereby is denied. So that relates to both the statutory claim and the constitutional claim of the defendant,” and then the circuit court further ruled that it found no prejudice resulting from the delay.
¶ 12. On appeal, Russell nonetheless asserts that the delay in his trial date violates both his statutory right to a trial within 270 days of his arraignment under Mississippi Code Annotated section 99-17- *535 1 (Rev.2007) and his constitutional right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article 8, section 26 of the Mississippi Constitution. Russell argues that his indictment should have been dismissed for failure to provide him with a speedy trial. Russell claims that 571 days passed between his date of arrest and his trial. Russell attributes this delay to the State, claiming that the State gave no reason for this delay. Russell asserts that such a lengthy delay prejudiced him by causing him to lose contact with a critical witness named “Ron Ron,” who could not be located prior to the trial.
¶ 13. Our standard of review when addressing the claims of speedy-trial violations is as follows:
Review of a speedy[-]trial claim involves a question of fact: whether the trial delay arose from good cause. We will uphold the trial court’s finding of good cause if that decision is supported by substantial, credible evidence. However, if no probative evidence supports the trial court’s findings, we must reverse the decision and dismiss the charge. The State bears the burden of proving good cause for the speedy trial delay, and thus bears the risk of non-persuasion. Good cause is a factual finding which is not different from any other finding of fact, and thus[,] an appellate court should not disturb the finding when it is based upon substantial evidence identified from the record.
Carr v. State, 966 So.2d 197, 200 (¶ 5) (Miss.Ct.App.2007) (internal citations omitted). We will affirm a trial court’s findings where they are supported by substantial, credible evidence. McBride v. State, 61 So.3d 138, 147 (¶ 34) (Miss.2011).
¶ 14. Regarding Russell’s statutory right to a speedy trial, section 99-17-1 states: “Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” Any delay as a result of action by the State that is not supported by good cause will cause that time to be counted against the State. Wiley v. State, 582 So.2d 1008, 1011 (Miss.1991). However, a delay caused by the actions of the defendant, such as a continuance, will toll the running of the time period for that length of time, and correspondingly, this time is subtracted from the total amount of the delay. Id.
¶ 15. The record shows that Russell was arrested on December 21, 2006, indicted on August 16, 2007, and arraigned on November 9, 2007. Russell’s trial was initially set for March 24, 2008, which was clearly within the statutory time of 270 days from his arraignment. We note that Russell filed a pro se motion to dismiss for lack of a speedy trial on May 2, 2007, prior to his indictment, which was denied due to no violation of section 99-17-1, but it resulted in his trial date being moved up on the trial docket to February 11, 2008.
¶ 16. However, Russell complained about his public defender, and he was subsequently appointed new counsel in February 2008, resulting in his trial date being returned to March 24, 2008. Russell claimed that he had not spoken to his initially appointed counsel in over a year. Russell’s new counsel then requested a mental evaluation on March 24, 2008. The trial transcript explains that the doctor performing the evaluation was booked until October 2008. The evaluation was performed on October 5, 2008, and the report explaining the results of the evaluation was issued the following day. After the defense-requested evaluation, the record reflects that Russell’s counsel asked that *536 Russell’s case be put back on the trial docket, but the record shows that his counsel failed to ask for a trial setting. The Mississippi Supreme Court has held that while a defendant has no duty to bring himself to trial, he does have a responsibility to assert his right to a speedy trial. Jaco v. State, 574 So.2d 625, 632 (Miss.1990). Russell’s trial finally began on January 27, 2009. However, as explained above, much of that time is attributable to defense delay.
¶ 17. In its pretrial motion, the State argued that Russell was arrested on December 26, 2006, and indicted on August 26, 2007, with the arraignment on November 9, 2007. The State asserted the case was set for trial on March 24, 2008, and the State submitted that the trial date was delayed because of the defendant’s request for new counsel and also for a mental evaluation. The State asserted that as soon as Russell obtained his mental evaluation, he received a trial setting within 270 days. The State argued that the time from March 24, 2008, the original trial date and also the date of Russell’s oral motion requesting a mental evaluation, to January 27, 2009, the date of trial, constituted a delay attributable to the defense, due to the request for the mental examination. The trial transcript also reflects that during the pretrial motions, the defense agreed that the period of time when Russell was awaiting the evaluation should not be attributable to the State.
¶ 18. The circuit judge addressed the accountability of the delay in ruling upon pretrial motions, stating:
On 12-21-06 initially arrested, 8-16-07 indictment, 11-9-07 arraignment, trial set for March 24, 2008, 12-21-07 the court denies motion to dismiss for lack of speedy trial. 2-11-08 trial date. No trial as defendant complained of public defender.
On 8-10-08 the State moves to amend indictment to allege violent habitual offender, 3-21-08 defendant moves to set aside 12-21-07 order, 3-24-08 jury selection and commencement of trial to begin. And then there was substantial argument made by Mr. Kessler [assistant district attorney] in his brief in response to the motion to set aside the court’s order.
This court notes in this brief filed by Mr. Kessler that on December 21, 2007 this court denied a motion to dismiss filed pro se by Russell but moved his case for trial to February 11, 2008. That trial did not commence as Russell was complaining of his public defender and demanding new counsel, which he was given.
This court, argued by Mr. Kessler, said it should attribute this delay to Russell, and therefore does not count this period of delay against the State. In total, this Court should find that all but the last 42 days of delay are attributable to the State, albeit with limited weight given the absence of evidence indicating intentional delay, again, argued by Mr. Kessler as that delay exceeds the presumptively prejudicial threshold of eight months, this Court should hold this factor to favor [Russell].
¶ 19. As stated, the circuit judge concluded that he found “all but the last 42 days of delay are attributable to the State, albeit with limited weight given the absence of evidence indicating intentional delay.” The circuit judge also explained that he considered “all aspects of this case, and particularly the motion, and considered] the history, the timeline, the Barker factors, arguments of counsel ..., [and] briefs of counsel previously submitted to the court” when denying the motion to dismiss. As our supreme court requested in State v. Ferguson, 576 So.2d 1252, 1255 *537 (Miss.1991), when examining a defendant’s assertion of a speedy-trial violation, “it would be extremely helpful if the [c]ircuit [cjourts ... would provide us with an articulated statement of their findings of evi-dentiary fact made and the reasons for the decision to grant [or deny] the motion.” In the present case, we find the circuit court’s findings are supported by substantial, credible evidence; thus, we find no violation of Russell’s statutory right to a speedy trial.
¶ 20. We now address Russell’s constitutional concerns. Regarding Russell’s constitutional right to a speedy trial, the United States Supreme Court established a four-part balancing test to determine the parameters of a speedy trial were, and to determine when an accused’s right to a speedy trial had been violated, stating: “(1) length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) prejudice to the defendant.” Barker v. Wingo, 407 U.S. 514, 529-34, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Mississippi Supreme Court has adopted the Barker analysis as applicable to the state constitutional speedy trial right. See Skaggs v. State, 676 So.2d 897, 900 (Miss.1996).
¶ 21. In examining the first factor, the length of delay, we note that the constitutional right to a speedy trial, unlike the statutory right created by section 99-17-1, attaches when a person has been effectively accused of a crime. Jenkins v. State, 947 So.2d 270, 276 (¶ 14) (Miss.2006). In addition, this “first factor has been called a triggering mechanism because until there is some delay which is presumptively prejudicial, there is no need for an inquiry into the other balancing test factors.” Carr, 966 So.2d at 201 (¶ 8) (citing Barker, 407 U.S. at 531-32, 92 S.Ct. 2182). “[T]here must first be a finding of a ‘presumptively prejudicial’ delay or our inquiry on the issue ends.” Id. Here, the record reflects that Russell’s trial finally began on January 27, 2009. Additionally, “[a]n eight-month delay between arrest and trial has been found to be presumptively prejudicial.” Id. (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). We note that Russell’s trial occurred a little more than two years after his arrest; therefore, the delay is therefore presumptively prejudicial, and the remaining Barker factors must be considered.
¶ 22. The second factor considers whether the delay was justified, and the burden shifts to the State to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons. Carr, 966 So.2d at 201 (¶9). “Delays caused by the defense, such as requests for continuances, will toll the running of the speedy trial clock for that length of time attributable to the continuance.” Hersick v. State, 904 So.2d 116, 121 (¶ 8) (Miss.2004) (citation omitted). Although the circuit judge’s ruling in the present case does not explicitly calculate all days attributable to defense delay, the circuit judge did, as previously noted, explain that he found all but the last forty-two days of delay to be attributable to the State. The circuit judge gave limited weight to the delay by the State, however, due to the absence of evidence indicating intentional delay. The record reflects that Russell made the request for new counsel and also requested a mental evaluation, resulting in a delay of the trial date in order to accommodate these requests. The Mississippi Supreme Court has held that the defendant is responsible for delays resulting from psychiatric, mental, physical, and IQ examinations requested by the defense. Thorson v. State, 653 So.2d 876, 891 (Miss.1994). Additionally, in Magnusen v. State, 741 So.2d 282, 289 (¶ 24) (Miss.Ct.App.1998), this Court ex *538 plained that a delay caused by the withdrawal of the defendant’s attorney cannot be weight against the State because such delay is beyond the State’s control. We further note that the doctor selected by the defense for the examination was unable to conduct Russell’s mental evaluation until nearly seven months after Russell’s request. Therefore, we will weigh this factor as neutral.
¶ 23. In turning to the third factor, we examine Russell’s assertion of his right to a speedy trial. This Court has stated:
Though the State has the burden to provide a speedy trial, a defendant attains more points under this factor of the Barker test if he has asserted his right to a speedy trial. Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Muise v. State, 997 So.2d 248, 253 (¶ 15) (Miss.Ct.App.2008) (internal citations and quotations omitted). The record reflects that Russell filed a motion for right to a speedy trial on May 2, 2007, which was prior to his indictment. The circuit judge dismissed Russell’s motion, but re-scheduled his trial for an earlier date.
¶ 24. The record also shows that Russell filed various additional motions in relation to his speedy trial request — including a motion to set aside the order denying the motion to dismiss for lack of speedy trial, a motion to show cause for delay, and a motion to dismiss the indictment for failure to provide a speedy trial.
¶ 25. In considering the final factor of whether Russell was prejudiced by the delay, we must look to the three interests for which the speedy-trial right was designed: to prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired. Bonds v. State, 938 So.2d 352, 358 (¶ 16) (Miss.Ct.App.2006). In Jenkins, 947 So.2d at 277 (¶ 21) (internal citations and quotations omitted), the supreme court held that “[gjenerally, proof of prejudice entails the loss of evidence, the death of witnesses, or the staleness of an investigation.” Additionally, we note that the defendant bears the responsibility of showing prejudice in order to weight this factor in his favor. See Birkley v. State, 750 So.2d 1245, 1252 (Miss.1999); Perry v. State, 637 So.2d 871, 876 (Miss.1994). In his motion to dismiss, Russell asserts that he was “suffering mental anxiety” while being held without bond. However, the supreme court has held that “a defendant’s assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal.” Jenkins, 947 So.2d at 277 (¶ 21).
¶ 26. Russell claims that he was prejudiced by the delay in his trial date since he lost contact with Ron Ron, who Russell submits to be a “critical” witness. Russell alleges that Ron Ron would testify that he picked up Russell from Hawkins’s house prior to the shooting. However, the record supports the State’s argument that Russell admitted on cross-examination that he never knew Ron Ron’s last name. We find Russell’s claim of prejudice to lack support. See Birkley, 750 So.2d at 1252; Perry, 637 So.2d at 876. We further find that the circuit court was within its discretion in determining that the length of time between Russell’s arrest and trial did not violate either his statutory or his constitutional right to a speedy trial. See Alexander v. State, 841 So.2d 1138, 1144, 1146 (¶¶ 15, 24) (Miss.Ct.App.2002) (explaining analysis for courts to utilize when reviewing possible violations of a defendant’s constitutional and statutory right to a speedy trial). The record reflects that the circuit judge carefully considered Russell’s claims and applied the appropriate judicial tests. *539 Although the circuit judge did not fully articulate his calculations regarding defense delay in his findings, the record shows that the circuit judge spoke to the issue of prejudice and the Barker factors; thus, we find that the circuit court’s findings are supported by substantial evidence in the record. See Ferguson, 576 So.2d at 1255. Finding no error by the circuit court, we find that this issue is without merit.
II. Prosecutorial Vindictiveness
¶ 27. Russell next argues that the amended motion to amend the indictment to charge him as a habitual offender should not have been granted due to pros-ecutorial vindictiveness. Russell alleges that the State made a plea offer to him prior to trial and told him that if he rejected the plea offer, the indictment would be amended to allege that he was a habitual offender under section 99-19-83. Russell claims that the State’s action of filing its amended motion to amend the indictment after the trial had ended but prior to sentencing, alleging that Russell had four pri- or convictions, one of which was a crime of violence, constituted prosecutorial vindictiveness.
¶ 28. “The doctrine of prose-cutorial vindictiveness ‘precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution.’ ” Garlotte v. State, 915 So.2d 460, 467 (¶23) (Miss.Ct.App.2005) (citations omitted). “Where there is a ‘reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority,’ there is a presumption of prosecu-torial vindictiveness.” Moore v. State, 938 So.2d 1254, 1264 (¶ 30) (Miss.Ct.App.2006) (citing Alabama v. Smith, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). “However, when no such likelihood exists, it is the defendant’s burden to prove actual vindictiveness.” Id. (citing Alabama, 490 U.S. at 799-800, 109 S.Ct. 2201).
¶ 29. In Baskin v. State, 986 So.2d 338, 344 (¶ 19) (Miss.Ct.App.2008), Keith Bas-kin, like Russell, argued that the circuit court erred in allowing the State to amend the indictment after the verdict, but prior to sentencing. The court found no merit in Baskin’s claims of prosecutorial vindictiveness, noting that the prosecutor offered the plea bargain in the presence of both Baskin and his counsel, that Baskin “was advised, prior to trial, of the consequences of going to trial and receiving a guilty verdict in light of his past criminal history,” and that Baskin “was free to accept or reject the plea bargain at issue.” Id. at (¶¶ 19-20).
¶ 30. In the present case, the trial transcript and Russell’s brief allude to a document that the State sent to Russell’s counsel on February 14, 2008, making Russell a plea offer as a non-habitual offender, which stated that “if he refused this offer, we’ll amend indictment to big H.O. on both counts” and was signed by an assistant district attorney.[1] We therefore find that Russell was aware of the terms of the plea agreement. In ruling on Russell’s objection to amending the indictment, the circuit judge stated:
The current state of the law is they can do what they did. And that’s the opinion of the Court.... And probably what they have done is try to make an offer, plea bargain, which is obviously common in this Court, this state, all over the country. It’s done every day hundreds if not thousands of times, what they’ve *540 done in this case, made an offer saying if you — this is our offer, plea bargain. If you don’t take it it’s off the table, we’re going for the maximum, or we’re going to amend to enhance the penalty.
¶ 31. The Baskin court also noted that Mississippi law holds that “prior offenses used to charge the defendant as [a] habitual offender are not substantive elements of the offense charged”; thus, the State is allowed to amend a defendant’s indictment after the verdict, but prior to sentencing. Id. at (¶ 19) (citing Shumaker v. State, 956 So.2d 1078, 1087 (¶ 26) (Miss.Ct.App.2007)). Thus, we cannot find that the circuit court erred in allowing the State to amend its indictment prior to sentencing, but after conviction. This issue is without merit.
III. Discovery Violation
¶ 32. Russell claims that due to a discovery violation by the State, he should not have been sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83. . He argues that after he was found guilty but prior to sentencing, the State provided him with documents relating to his four prior convictions. Russell claims that the length of time he served for two of the convictions was in dispute. Russell states that the documentation provided by the State showed that he had served exactly one year, which marks the difference between him being sentenced under Mississippi Code Annotated section 99-18-81 (Rev. 2007) as opposed to section 99-19-83. Russell claims that he did not have the opportunity to investigate adequately the length of the sentences he had served, and the circuit court failed to give him a continuance to allow him to do so.
¶ 33. For a discovery violation to require reversal, this Court has established that there must be a showing of prejudice, and the non-diselosed material must be more than simply “cumulative.” McCoy v. State, 811 So.2d 482, 484 (¶ 15) (Miss.Ct.App.2002). The State argues that Russell had actual knowledge of his prior convictions, since he was convicted and served time. The State further argues that convictions three and four were served concurrently as convictions one and two, so if Russell had no problem with the computation of the time served for the first two convictions, he should not have a problem with the third and fourth convictions, either; therefore, he cannot show any prejudice.
¶ 34. The record reflects that the State called Evelyn Dixon, a special-projects officer at the MDOC who also serves as the records custodian, to testify that two time sheets existed regarding Russell’s prior convictions — “one for each incarceration, which we have two charges on each time sheet.” Russell’s counsel admitted that he had time to examine the documents, although he clarified that he was not confirming their accuracy as to the computation of time served. After hearing testimony from Dixon and Lieutenant Tammy Gaines, who works at the Hinds County Sheriffs Office detention center in Raymond, Mississippi, the circuit judge found that “the State has now complied with the habitual[-]offender statute, section 99-19-83 ... by proving four previous felony convictions prior to the conviction of [Russell], one of which was a violent crime. Actually two, an aggravated assault and felon in possession of a firearm.” The circuit judge then clarified that he made these findings “beyond a reasonable doubt.”
¶ 35. In this case, we find no discovery violations and also no showing of prejudice. Id. Any discovery violation that might have occurred was harmless error.
*541 IV. Insufficient Evidence
¶36. Russell’s fourth and fifth assignments of error relate to his habitual offender status and subsequent sentencing; thus, we will address these two assignments of error together.
¶ 37. Russell calls into question the circuit court’s finding beyond a reasonable doubt that he had four prior convictions, and one of the prior convictions was for a crime of violence. He also claims that the circuit court could not find, beyond a reasonable doubt, that he had served sentences of one year or more for two of the sentences. Russell alleges that the evidence presented at trial was insufficient to sentence him as a habitual offender to life without parole or probation, pursuant to section 99-19-83. Instead, Russell claims that the documents provided by the MDOC in support of his habitual offender status only proved that one of his sentences had been served for one year or more. Russell states that the discharge certificate was only dated one year after the sentence had begun, but it did not state Russell’s actual release date.
¶ 38. We note that the State must prove a defendant’s habitual-offender status beyond a reasonable doubt. Gilbert v. State, 48 So.3d 516, 524-25 (¶ 35) (Miss.2010). The record reflects that the State called Dixon to testify as to the language in Russell’s inmate time sheets as well as to the terms of Russell’s incarceration. On direct examination, the prosecutor inquired about Russell’s convictions and incarcerations and established the following:
Q: Ms. Dixon, I’m going to call your attention to a possession of cocaine and possession of marijuana, less than once ounce, to distribute conviction that was rendered in the Circuit Court of Madison County on October 27, 1995[,] in which the defendant was sentenced' to two years in the Department of Corrections.
’ Do you have any records that reflect whether or not this defendant was held in custody by the Department of Corrections on those two charges?
A: Yes, sir.
Q: And were those charges run consecutively or concurrently?
A: They’re run concurrent.
Q: Okay. And how much time did the Cedric Russell that’s reflected in your records serve on those two concurrent charges?
A: He was sentenced to serve two years. He served one year that run concurrent. So he served one year.
Q: Okay. From what date to what date?
A: Begin date April 10, 1995, and released April 10,1996.
Q: I’m now going to call your attention to a possession[-]of[-]firearm[-]by[-]a[-]convicted[-]felon conviction from the Circuit Court of Madison County, cause number 99-0067, count three, in which the defendant, Cedric Russell, was sentenced to one year in the Department of Corrections on February 29 of 2000.
Do you have any records that reflect that a Cedric Russell was received into custody by the Department of Corrections on that charge?
A: Yes, sir.
Q: And what do your records reflect that that Cedric Russell served in custody on that charge? How much time?
A: His sentence began on March 15, 1999, and was released on June 2, 2000.
Q: And he was sentenced to one year?
*542 A: Yes sir. He was sentenced to one year on the possession of a weapon as a felon, and one year, two months, 19 days on the aggravated assault.
Q: Okay.
A: And those two run concurrent.
Q: And aggravated assault cause number 98-2-018 out of the first judicial district of Hinds County, Mississippi, the defendant was sentenced on May 9 of 2000. I believe you’ve already stated, is that the conviction you were talking about, the aggravated assault?
A: Yes, sir.
Q: And how much time did he serve on that?
He served 445 days.
That is in excess of one year?
Yes, sir.
¶ 39. On cross-examination, Dixon also affirmed that she could tell the court, beyond a reasonable doubt, that Russell did indeed serve one year on two of the charges. As stated above, the circuit judge found, beyond a reasonable doubt, that “the State has now complied with the habitual[-]offender statute, section 99-19-83 ... by proving four previous felony convictions prior to the conviction of [Russell], one of which was a violent crime. Actually two, an aggravated assault and felon in possession of a firearm.”
¶ 40. We find from the record before us that the circuit court did not err in finding that the State had presented sufficient evidence showing that Russell had met the requirements of section 99-19-83. See Gilbert, 48 So.3d 516 at 525 (¶¶ 37-38). Therefore, the circuit court did not err in sentencing Gilbert as a habitual offender under section 99-19-83. We find no merit to Russell’s fourth and fifth assignments of error.
V. voir Dire
¶ 41. Russell next argues that the voir dire process prejudiced the jury against him, which denied him a fair and impartial trial. Specifically, Russell claims that the circuit judge refused to allow Russell to ask the venire that “if they were in the minority, and after their deliberations had ended, would they change their vote merely to go home, or merely to go along with the majority.” Russell claims that the circuit judge also improperly denied his challenges for cause for the three veniremen who stated that when they entered the courtroom, they wondered “what Russell had done, not merely what he had been charged with.” Russell submits that one of those veniremen said he wondered what Russell did based on the fact that he was a young, black male.
¶ 42. Generally, a voir dire is presumed sufficient to ensure a fair and impartial jury. Ross v. State, 954 So.2d 968, 988 (¶ 31) (Miss.2007). In order to overcome the presumption of fairness and impartiality, “a party must present evidence indicating that the jury was not fair and impartial and show that prejudice resulted from the circuit court’s handling of the voir dire.” Id. (citing Manning v. State, 735 So.2d 323, 336 (¶ 19) (Miss.1999)). Additionally, “[a] trial court’s finding that an impartial jury was impaneled will not be reversed unless the court abused its discretion.” Id. (citing Holland v. State, 705 So.2d 307, 336 (¶ 97) (Miss.1997)).
¶ 43. Regarding Russell’s claim that the circuit judge refused to allow Russell to ask the venire that “if they were in the minority, and after their deliberations had ended, would they change their vote merely to go home, or merely to go along with the majority,” we note that “judicial rules prohibit a party from asking venire members hypothetical *543 questions or attempting to elicit a pledge to vote a certain way if a certain set of circumstances are shown.” Id. at 989 (¶ 35). Additionally, our supreme court “has held that a defendant fails to show the necessary prejudice where the defense counsel fails to question jurors about an inappropriate comment, and the venire members have made general declarations that they could set aside their prejudices and reach a decision based on the evidence.” Id. at 988 (¶ 32) (citing Holland, 705 So.2d at 339-40 (¶¶ 121-23); West v. State, 463 So.2d 1048, 1054 (Miss.1985). Thus, we find that the circuit court’s ruling in the present case was within its discretion.
¶ 44. Turning next to Russell’s claim regarding his challenges for cause, the record reflects that during the jury-selection conference, defense counsel challenged for cause the three jurors who Russell submits “wondered what he did.” After hearing arguments from the prosecutor and defense counsel, the circuit judge refused to remove these jurors for cause. The circuit judge explained his decision, stating that:
the court asked if everybody could be fair and impartial, and if anyone couldn’t let us know. Those weren’t the exact words, but certainly it was not stated explicitly, inclusively. And the court went over and over the fact that this man is innocent at this time and repeated what the court advised them earlier. So the court believes they were properly advised about the innocence of this man at this time. And so the court does not believe there’s been a showing for cause for those ones.
The record shows that the circuit judge also previously explained to the veniremen that they were entitled to their first impression of Russell, but clarified that “the fact that an indictment has been returned against [Russell] is no indication of guilty whatsoever.” Eventually, the defense counsel exercised peremptory challenges on each of the three jurors at issue, and as a result, none of these challenged jurors sat on the trial jury. Thus, we find this issue is without merit. Tapper v. State, 47 So.3d 95, 98-99 (¶¶ 11-15) (Miss.2010).
¶45. In Christmas v. State, 10 So.3d 413, 423 (¶¶ 46-47) (Miss.2009), the supreme court refused to address the merits of the defendant’s claim that the circuit court erred by denying his challenge for cause against a juror who did not actually sit on the jury, based on comments that juror made during voir dire examination. The supreme court cited its previous decision in Mettetal v. State, 615 So.2d 600, 603 (Miss.1993), wherein the court held that:
So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his constitutional rights. Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90 (1988). This Court has explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror was forced by the trial court’s erroneous ruling to sit on the jury. Chisolm v. State, 529 So.2d 635, 639 (Miss.1988).
¶ 46. This issue is without merit.
VII. Batson Challenge
¶47. In his final assignment of error, Russell argues that the circuit court erred in denying his Batson objection regarding the State’s use of peremptory challenges against African American venirepersons without adequate, race-neutral justification. Russell points to the fact that all *544 twelve of the State’s peremptory challenges were of African American people, and for some challenges, the State failed to give race-neutral reasons.
¶ 48. This Court employs a well-established standard of review when considering Batson challenges. Camper v. State, 24 So.3d 1072, 1074 (¶ 12) (Miss.Ct.App.2010). “This Court reviews a trial court’s ruling on a Batson challenge with great deference and will not overturn the trial court’s ruling unless it is clearly erroneous or against the overwhelming weight of the evidence.” Id. at 1074-75 (¶ 12) (quoting Pruitt v. State, 986 So.2d 940, 942 (¶ 8) (Miss.2008)). We accord great deference in the findings of the circuit court because “the trial judge is in the best position to evaluate the demeanor and credibility of the attorney offering the gender/race-neutral explanation.” Id. at 1075 (¶ 12) (quoting Perry v. State, 949 So.2d 764, 767 (¶ 7) (Miss.Ct.App.2006)).
¶ 49. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution prohibits parties from exercising peremptory challenges against jurors “solely based on their race.” Johnson v. State, 529 So.2d 577, 583 (Miss.1988) (citing Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). When a party asserts that a discriminatory purpose for the peremptory challenge exists, qualifying it as a Batson challenge, a trial court should employ the following three-step procedure:
(1) the defendant must make out a pri-ma facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; (2) once the defendant has made out a pri-ma facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination.
Pruitt, 986 So.2d at 942-43 (¶ 8).
¶ 50. Turning to the facts of the case at bar, we will review each of Russell’s strikes individually that are at issue on appeal. Russell specifically names Shirley Banks, Sheila Williams, Mary Ashmore, and Emma Lee Boone, and asserts that the State failed to provide a race-neutral reason for striking these venirepersons.
¶ 51. In reviewing the record, we note that Russell objected to the State’s peremptory strikes on the grounds that all twelve strikes were African American venirepersons, and he contended that there were no race-neutral reasons for those strikes. The State proceeded to explain the race-neutral reasons for each of its strikes. Beginning with Banks, the State explained that it struck her due to the fact that she had a class starting at 6:00 p.m., and she informed the court during voir dire that “she didn’t want to be here past 5:30.” The State also noted that Banks wears glasses, but she did not bring them with her that day, although she stated that she would bring her glasses if chosen for the jury. Next, the State explained that when the venire was asked whether they would make the State prove motive, Williams nodded her head affirmatively. The State stated that it struck Williams due to the indication that she would make the State prove motive when motive may not be necessary to prove. The State next explained that it struck Ashmore due to her late work schedule, which may affect her ability to remain attentive during trial, as well as the fact *545 that she has a brother-in-law who works at Oakley Training School, which may cause her to have some sympathy for Russell. Finally, the State explained that it struck Boone due to her employment at the Mississippi State Hospital at Whitfield. The State explained its concern that Boone:
may at some point during this trial speculate as to the mental abilities if that were to come up. Even with no motive, especially her being sympathetic in that regard ... I think we have the right to strike somebody that works at a mental institution, especially in this case.
¶ 52. After listening to the State’s race-neutral reasons for its peremptory strikes, the circuit judge overruled Russell’s objection, finding that the State had provided sufficient race-neutral justifications for each of its strikes. We note that precedent requires that we give great deference to the circuit court’s findings of whether or not a peremptory challenge was race neutral, see Manning, 765 So.2d at 519 (¶ 8); Booker, 5 So.3d at 358 (¶ 3). Additionally, we acknowledge that the supreme court has accepted the following as race-neutral reasons for the exercise of peremptory challenges: living in a “high[-]crime” area, body language, demeanor, prosecutor’s distrust of the juror, inconsistency between oral responses and juror’s card, criminal history of juror or relative, social work and other types of employment, and religious beliefs, and inattentiveness. Hicks v. State, 973 So.2d 211, 220 (¶¶ 27-28) (Miss.2007) (internal citations omitted). The record demonstrates that the circuit court properly made a sincere effort to weigh and examine the race-neutral reasons provided by the State. Nothing in the record before us reveals that the circuit court abused its discretion in finding that the State had provided sufficient race-neutral reasons for its peremptory strikes. Thus, we find no merit to this issue.
¶ 53. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND COUNT II, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE FOR EACH COUNT, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS AND RUSSELL, JJ„ CONCUR. BARNES AND MAXWELL, JJ„ CONCUR IN PART AND IN THE RESULT.

. This document does not appear in the record.